**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

20230930-DK-BUTTERFLY-1, INC., f/k/a
BED BATH & BEYOND INC.,

                Plaintiff,

      v.

RYAN COHEN and RC VENTURES LLC,

                Defendant.

Case No. 1:24-cv-05874-NRB

---

### DEFENDANTS RYAN COHEN AND RC VENTURES LLC'S
### MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

WOLLMUTH MAHER & DEUTSCH LLP

Joshua M. Slocum
Maxwell G. Dillan
Jocelyn M. Stuto
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
jslocum@wmd-law.com
mdillan@wmd-law.com
jstuto@wmd-law.com

*Attorneys for Defendants Ryan Cohen
and RC Ventures LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................1

BACKGROUND ...........................................................................................3

    A.    The Parties. ....................................................................................3

    B.    RCV Purchases BBBY Shares Between January and March 2022. ........................3

    C.    RCV Enters into a Cooperation Agreement with BBBY in March 2022. ..............4

    D.    In April 2022, BBBY Discloses a Reduced Share Count Due to Share Repurchases. ..................................................................................7

    E.    RCV Sells Its BBBY Shares in August 2022. ..........................................8

PROCEDURAL HISTORY .................................................................................8

LEGAL STANDARDS ....................................................................................10

    A.    Rule 12(b)(6) ..................................................................................10

    B.    Section 16(b) ..................................................................................10

ARGUMENT .............................................................................................11

I.    Plaintiff Fails to State a Section 16(b) Claim Against the Cohen Defendants as Directors by Deputization. ..............................................................12

    A.    Plaintiff Fails to Allege that the Cohen Defendants Bought BBBY Shares While Directors by Deputization. ..........................................12

    B.    Plaintiff Fails to Allege that the Cohen Defendants Deputized the New Directors. ..................................................................................14

II.    Plaintiff Fails to State a Section 16(b) Claim Against the Cohen Defendants as Beneficial Owners. ..................................................................17

    A.    To Be a "Beneficial Owner," an Investor Must Have Actual or Constructive Knowledge that It Beneficially Owns More Than 10% of an Issuer's Outstanding Shares. ..............................................................17

    B.    Plaintiff Does Not Adequately Allege that the Cohen Defendants Knew or Should Have Known that They Beneficially Owned More Than 10% of BBBY's Shares. ............................................................................20

CONCLUSION ...........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................. 10

*Blau v. Lehman*,
    368 U.S. 403 (1962).................................................................................. 15

*C.R.A. Realty Corp. v. Enron Corp.*,
    842 F. Supp. 88 (S.D.N.Y. 1994) ....................................................19, 23, 24

*Faber v. Metro. Life Ins.*,
    648 F.3d 98 (2d Cir. 2011)....................................................................... 10

*Foremost-McKesson, Inc. v. Provident Sec. Co.*,
    423 U.S. 232 (1976).................................................................................. 18

*Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC*,
    298 F.3d 136 (2d Cir. 2002)..................................................................... 13

*Gryl v. Shire Pharms. Grp. PLC*,
    2001 WL 1006628 (S.D.N.Y. Aug. 31, 2001) ...................................13, 14

*Gwozdzinsky v. Zell/Chilmark Fund, L.P.*,
    156 F.3d 305 (2d Cir. 1998)..................................................................... 10

*Hu v. City of N.Y.*,
    927 F.3d 81 (2d Cir. 2019)......................................................................... 3

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 544 (S.D.N.Y. 2014)...................................................... 11

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
    650 F.3d 167 (2d Cir. 2011)..................................................................... 11

*Levy v. Southbrook Int'l Invs., Ltd.*,
    263 F.3d 10 (2d Cir. 2001)....................................................................... 18

*Lowinger v. Morgan Stanley & Co.*,
    841 F.3d 122 (2d Cir. 2016)..................................................................... 18

*Olagues v. Perceptive Advisors LLC*,
    902 F.3d 121 (2d Cir. 2018)..................................................................... 10

*Packer v. Raging Cap. Mgmt., LLC*,
   981 F.3d 148 (2d Cir. 2020) ........................................................................... 24

*Reliance Elec. Co. v. Emerson Elec. Co.*,
   404 U.S. 404 (1972) ....................................................................................... 24

*Rubenstein v. Int'l Value Advisers, LLC*,
   959 F.3d 541 (2d Cir. 2020) ........................................................................... 14

*Rubenstein v. vTv Therapeutics, Inc.*,
   2017 WL 1194688 (S.D.N.Y. Mar. 30, 2017) ................................................ 24

*SEC v. Nutra Pharma Corp.*,
   2022 WL 3912561 (E.D.N.Y. Aug. 31, 2022) ............................................... 18

*St. Clair-Hibbard v. Am. Fin. Tr., Inc.*,
   812 F. App'x 36 (2d Cir. 2020) ........................................................................ 3

*Stratte-McClure v. Morgan Stanley*,
   598 F. App'x 25 (2d Cir. 2015) ...................................................................... 23

*Van Aalten v. Hurley*,
   176 F. Supp. 851 (S.D.N.Y. 1959) ................................................................. 25

**Statutes**

15 U.S.C. § 78p(b) ............................................................................... 10, 12, 18

15 U.S.C. § 78w(a)(1) ................................................................................... 25

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1, 3, 10, 11

**Regulations**

17 C.F.R. § 240.13d-1 ..........................................................................*passim*

17 C.F.R. § 240.16a-1 ................................................................................18, 19

17 C.F.R. § 240.16a-2 ................................................................................13, 14

**Other Authorities**

Romeo & Dye, S*ection 16 Treatise and Reporting Guide* (5th ed. 2019) ......................15, 19, 22

SEC Division of Corporation Finance, Compliance and Disclosure Interpretations,
Exchange Act Section 16 and Related Rules and Forms, Interp. 209.02 (May 23, 2007)........... 19

Defendants Ryan Cohen and RC Ventures LLC ("RCV," and together, the "Cohen Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Complaint ("FAC," ECF 17) of Plaintiff 20230930-DK-Butterfly-1, Inc., f/k/a Bed Bath & Beyond Inc. ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff fails to state a claim under Section 16(b) of the Exchange Act against the Cohen Defendants as a matter of law because they were not subject to the statute at all relevant times. Section 16(b) prohibits certain enumerated statutory insiders from profiting from "short swing" transactions, in which they buy and sell an issuer's shares within the same six months. Under longstanding SEC rules, Section 16(b) only applies when the defendant is one of the enumerated statutory insiders at the time of both the purchase and sale. It does not apply to cases such as this, where the alleged facts confirm that the defendants were only statutory insiders at the time of the sale, but not the purchase.

Plaintiff ignores these essential principles. It asks the Court to expand the reach of Section 16(b) to hold the Cohen Defendants liable for transactions that were plainly outside the scope of Section 16(b) and the SEC's implementing regulations. Plaintiff advances two legally defective theories: (1) the Cohen Defendants are liable as "directors by deputization," even though they are not alleged to have been "deputized" until weeks after they bought their shares; and (2) the Cohen Defendants should not have relied on Bed Bath and Beyond, Inc.'s ("BBBY") own representations regarding the Cohen Defendants' holdings, or its last-published share count, to determine whether they beneficially owned more than 10% of BBBY's stock.

*First*, directors, including directors by deputization, are not liable under Section 16(b) for transactions occurring before they join an issuer's board. The Cohen Defendants' last purchase of BBBY shares occurred three weeks before the Cohen Defendants are even alleged to have *become*

"directors by deputization," based on the appointment of three new independent directors to the BBBY Board as of March 24, 2022 (the "New Directors"). Purchases before that date definitively cannot be subject to Section 16(b). Further, Plaintiff has not adequately alleged that the Cohen Defendants deputized the directors. To adequately allege deputization, a party must, at a minimum, plead that the investor had representation on an issuer's board, actually received material nonpublic information from the representative, and used that information to inform its investment decisions. Plaintiff pleads neither of these elements. For either reason or both, Plaintiff's deputization theory fails.

*Second*, investors are entitled to rely on an issuer's most recent share count disclosure to determine whether they are beneficial owners of more than 10% of an issuer's outstanding shares, unless the investors knew or had reason to believe that the information is inaccurate. It is undisputed that the Cohen Defendants were not beneficial owners of more than 10% of BBBY's outstanding shares according to BBBY's most recent share count disclosure when they made their final purchases of BBBY shares. Moreover, at the time of the purchases, BBBY had publicly represented that the Cohen Defendants beneficially owned only 9.8% of BBBY's stock, and confirmed as much to the Cohen Defendants. To allege Section 16(b) liability, Plaintiff must adequately allege that the Cohen Defendants had actual or constructive knowledge that the share count was inaccurate. Plaintiff fails to allege such knowledge. Indeed, Plaintiff does not allege that the Cohen Defendants had actual knowledge of BBBY's outstanding share count until over a month after the final purchases. Instead, Plaintiff alleges only that the Cohen Defendants had constructive knowledge based on BBBY's general announcement of a share repurchase program. But that argument has been rejected as a basis to impose constructive knowledge by courts in this District and the leading treatise on Section 16(b). It should be rejected here as well.

Plaintiff's case contravenes the plain language of the Exchange Act and longstanding SEC rules promulgated pursuant to Section 16(b) that provide clear guidance to investors like the Cohen Defendants, and decades of authority on when a party can be held liable under Section 16(b). Plaintiff's case should be dismissed with prejudice under Rule 12(b)(6).

## BACKGROUND

This background is drawn from the FAC and assumed true only for this motion. *See Hu v. City of N.Y.*, 927 F.3d 81, 88 (2d Cir. 2019). It is also taken from "documents attached to or incorporated by reference in the complaint, legally required public disclosure documents filed with the SEC, and documents on which the plaintiff relied in bringing suit." *St. Clair-Hibbard v. Am. Fin. Tr., Inc.*, 812 F. App'x 36, 38 (2d Cir. 2020) (summary order) (citation omitted).

### A.    The Parties.

Plaintiff was formerly known as "Bed Bath & Beyond Inc.," until September 21, 2023, when it changed its name to "20230930-DK-Butterfly-1, Inc." as part of its wind-down following its Chapter 11 bankruptcy. FAC ¶ 11. Defendant RCV is a Delaware limited liability company with its principal place of business in Florida. *Id.* ¶ 13. RCV's principal business is to hold Mr. Cohen's investments; Mr. Cohen also serves as RCV's Manager. *Id.* ¶¶ 12-13.

### B.    RCV Purchases BBBY Shares Between January and March 2022.

On March 7, 2022, the Cohen Defendants filed a Schedule 13D with the SEC, disclosing RCV's beneficial ownership of 9,450,100 shares of BBBY—consisting of 7,780,000 shares and 1,670,100 shares underlying call options. FAC Ex. A.[1] The March 7 Schedule 13D disclosed that RCV purchased these shares between January 13, 2022 and March 3, 2022. *Id.* at 9 (Sched. A). Plaintiff does not allege that RCV purchased—and in fact RCV did not purchase—another share

---

[1] For ease of reference, pin citations to pages of exhibits refer to the ECF pagination.

of BBBY *after* March 3, 2022. *Id.*; FAC ¶ 163 & Table 1.[2]

The March 7 Schedule 13D stated that RCV's 9,450,100 shares amounted to beneficial ownership of 9.8% of BBBY's then-outstanding shares—calculated based on BBBY's most recent share count disclosure on November 21, 2021. FAC Ex. A at 6 (Item 5(a)) (ownership interest calculated "based upon 96,337,713 Shares outstanding as of November 27, 2021 as reported in the Issuer's Quarterly Report on Form 10-Q filed with the Securities and Exchange Commission on January 6, 2022"). The March 7 Schedule 13D also attached a letter the Cohen Defendants sent to the BBBY Board. *Id.* at 10-13. The letter called for BBBY to enact certain changes to improve shareholder value, including spinning off BBBY's buybuy BABY business. *Id.*

### C.    RCV Enters into a Cooperation Agreement with BBBY in March 2022.

On March 24, 2022, three weeks after RCV's last purchase, BBBY and RCV entered into a Cooperation Agreement. FAC Ex. B at 8. In the Cooperation Agreement, BBBY and RCV acknowledged that RCV beneficially owned 9.8% of BBBY's outstanding shares, with specific reference to RCV's total shareholdings. *Id.* ("WHEREAS, as of the date hereof, [RCV] beneficially owns . . . 9,450,100 shares, or approximately 9.8% of the Common Stock issued and outstanding on the date hereof . . . ."). BBBY also confirmed to the market in its March 25, 2022 press release announcing the Cooperation Agreement that RCV only beneficially owned 9.8% of BBBY's outstanding shares. *Id.* at 23 (BBBY "today announced that it has entered into a cooperation agreement with Ryan Cohen and RC Ventures LLC . . . the beneficial owners of approximately 9.8% of the Company's outstanding shares."). BBBY attached this press release to its Form 8-K filed with the SEC. *Id.*

Under the Cooperation Agreement, BBBY agreed to increase the Board from eleven to

---

[2] Mr. Cohen did not personally own any BBBY shares. As the Manager of RCV, Mr. Cohen "may be deemed to beneficially" own the shares directly beneficially owned by RCV. FAC Ex. A at 6.

fourteen directors. *Id.* at 8 (Section 1(a)(i)(A)). BBBY agreed to add the three independent New Directors to the Board—Marjorie L. Bowen, Shelly C. Lombard, and Benjamin Rosenzweig—until BBBY's 2022 annual shareholder meeting, at which time BBBY would revert to an eleven-member Board, and BBBY would support the New Directors' re-election. *Id.* (Section 1(a)(i)(B)). The New Directors "officially joined BBBY's Board with the signing of the Cooperation Agreement on March 24, 2022." FAC ¶ 32.

If a New Director resigned or was removed during the standstill period, then RCV also received the right to recommend a replacement, subject to the Board's approval and certain other conditions. FAC Ex. B at 9 (Section 1(a)(ii)). Two New Directors would also serve on a four-member strategy committee of independent directors to review strategic alternatives for the buybuy BABY business. *Id.* at 10 (Section 1(b)(i)). In exchange, RCV agreed to "standstill restrictions" for a designated period. *Id.* at 13 (Section 2(a)). During the standstill, RCV agreed to vote its shares in favor of the Board's nominated directors and in favor of the Board's recommendations—unless Institutional Shareholder Services Inc. and Glass Lewis & Co., LLC recommended against any Board proposals (other than the election of directors), provided that RCV could vote in its sole discretion on any extraordinary transactions. *Id.* at 12 (Section 1(e)(iii)).

The Cooperation Agreement did not grant RCV or Mr. Cohen any information rights or permit the New Directors to share confidential information with RCV or Mr. Cohen. Rather, the Cooperation Agreement *prohibited* the New Directors from sharing confidential information with the Cohen Defendants. *Id.* at 11 (Section 1(d)) (requiring the New Directors "to strictly adhere to the policies on confidentiality, insider trading and conflicts of interest imposed on all members of the Board"). It is thus unsurprising that Plaintiff does not identify any material nonpublic information that the New Directors shared with the Cohen Defendants. Plaintiff instead pleads in

conclusory fashion that the New Directors provided "some" confidential information to the Cohen Defendants based solely on allegations that Mr. Cohen had calls with Mr. Rosenzweig and one Zoom meeting with Ms. Lombard in April and May 2022. FAC ¶¶ 57-61. But Plaintiff does not allege what, if any, material nonpublic information was actually disclosed to the Cohen Defendants during those discussions. And Mr. Rosenzweig's sworn testimony dispels the notion that the New Directors shared such material nonpublic information, as he testified that his conversations with Mr. Cohen were limited to "high-level observation[s]' about BBBY board dynamics." *Id.* ¶ 60. While Plaintiff alleges that the New Directors requested more information sharing with Mr. Cohen, it also acknowledges that the other BBBY directors declined those requests. *Id.* ¶¶ 44-50.

In fact, the only specific material nonpublic information that Plaintiff alleges was shared with the Cohen Defendants came from *other* individuals. *Id.* ¶¶ 63-66; 88-90. For example, Plaintiff alleges that the Chair of the Board provided Mr. Cohen with information related to certain unidentified earnings data and the departure of BBBY's CEO the day before both were disclosed. *Id.* ¶ 66. Plaintiff also alleges that the CFO informed Mr. Cohen that management viewed its asset-backed facility as insurance on its balance sheet. *Id.* ¶¶ 88-90. The Cohen Defendants are not alleged to have traded on any of this information or otherwise used it in their investment strategy. In all other instances, Plaintiff alleges that Mr. Cohen purportedly *asked* these other individuals for material nonpublic information, but was rebuffed. *Id.* ¶¶ 74-86, 91-99. At the same time, however, Plaintiff acknowledges that Mr. Cohen repeatedly stated that he did not want material nonpublic information about BBBY from these individuals. *See, e.g.*, *id.* ¶ 79 (alleging that Mr. Cohen "stress[ed] that he wanted 'nothing about the quarter or restricted information'"). Instead, Plaintiff merely speculates that the Cohen Defendants received material nonpublic information from the New Directors based on (1) the Board's possession of certain alleged nonpublic

information that became public after the Cohen Defendants' sales (although even Plaintiff acknowledges the Board was unaware of some of the alleged nonpublic information) and (2) the commentary of Jim Cramer on his CNBC show and other BBBY employees' cryptic reactions to those comments. *Id.* ¶¶ 106-122.

### D. In April 2022, BBBY Discloses a Reduced Share Count Due to Share Repurchases.

In November 2021, BBBY publicly disclosed that it was "accelerat[ing]" its previously announced $1 billion three-year share repurchase program—anticipating completing the program "by the end of fiscal 2021, two years ahead of schedule." FAC Ex. H; FAC ¶¶ 136-138. BBBY's 2021 fiscal year ended on February 26, 2022. FAC ¶ 139. BBBY disclosed that it "expect[ed] to repurchase the remaining $400 million of the program by the end of fiscal 2021 [i.e., February 26, 2022] . . . over the third and fourth quarters." FAC Ex. H. On January 6, 2022, BBBY publicly disclosed that it had repurchased $120 million of shares in the third quarter of 2021 and estimated that it would repurchase around $275 million of shares in the fourth quarter of 2021. FAC ¶ 140.

With these filings, BBBY warned that the contemplated repurchases were subject to "a variety of factors, including price, general business and market conditions, and alternative investment opportunities." FAC Ex. H at 3; Declaration of Maxwell G. Dillan ("Dillan Decl."), Ex. 1 (Bed Bath & Beyond Inc., Quarterly Rep. (Form 10-Q) (Jan. 6, 2022)) at 6 ("The Company's share repurchase program could change, and could be influenced by several factors . . . Any future share repurchases will be . . . based on an evaluation of the Company's earnings, financial condition and requirements, business conditions and other factors[.]"). These disclosures proved appropriate, because BBBY did *not* end up completing its $1 billion share repurchase program on schedule. Dillan Decl. Ex. 2 (Bed Bath & Beyond Inc., Press Release, Ex. 99.1 (Form 8-K) (Apr. 13, 2022)) at 4 (stating that the repurchase program was not completed until March 2022).

On April 21, 2022, nearly fifty days after RCV's last purchase of BBBY shares, BBBY disclosed that, because of the repurchases, the number of shares outstanding had decreased to 81,979,000 as of February 26, 2022 and 79,845,789 as of March 26, 2022. Dillan Decl. Ex. 3 (Bed Bath & Beyond Inc., Annual Rep. (Form 10-K) (Apr. 21, 2022)) at 3, 8. This subsequent disclosure indicated that RCV had beneficially owned 11.5% of BBBY's shares following its last purchase of BBBY shares on March 3, 2022, and 11.8% of BBBY's shares by March 26, 2022. FAC Ex. C; FAC ¶ 152.

### E.    RCV Sells Its BBBY Shares in August 2022.

On August 16 and August 17, 2022, RCV sold all the BBBY shares and options it had purchased between January and March 2022. FAC ¶ 163 & Table 1.

### PROCEDURAL HISTORY

In late 2022, two BBBY shareholders filed Section 16(b) cases arising out of the August 2022 sales after the BBBY Board rejected the shareholders' litigation demands. *See In re Bed Bath & Beyond Inc. Section 16(b) Litig.*, No. 22-cv-09327 (S.D.N.Y.) ("*In re BBBY*"), ECF 1; *Cohen v. Cohen*, No. 22-cv-09733 (S.D.N.Y.) ("*Cohen*"), ECF 1. In rejecting the pre-suit demands, the BBBY Board explained to both shareholders that pursuing a Section 16(b) claim would be fruitless because the "transactions do not give rise to liability under Section 16(b)" and therefore "the profits identified . . . are not recoverable pursuant to Section 16(b)." *In re BBBY*, No. 22-cv-09327, ECF 66-7 at 1; *Cohen*, No. 22-cv-09733, ECF 28-2 at 1. The BBBY Board reasoned that (1) RCV "did not become a beneficial owner . . . for the purposes of Section 16(b) until after making the purchases," and could rely on the number of shares outstanding as "set forth in the issuer's most recent quarterly or annual report," (2) there was "no basis to conclude that [RCV] could be considered a director . . . through purportedly 'deputizing the New Directors to represent its interests on the Board,'" and (3) "even if [RCV] could be considered a director of [BBBY] by

deputization, it would still not be subject to Section 16(b) because it would not have been such a director at the time of the purchases identified in your Letter." *In re BBBY*, No. 22-cv-09327, ECF 66-7 at 2-3; *Cohen*, No. 22-cv-09733, ECF 28-2 at 2.

The two lawsuits were subsequently consolidated. *In re BBBY*, No. 22-cv-09327, ECF 20. BBBY supported the dismissal of both shareholders' claims, for the same reasons it declined to pursue them. In particular, the Cohen Defendants requested leave to move to dismiss the shareholders' claims (and responded to the shareholders' requests for leave to seek partial summary judgment) on the grounds that the Cohen Defendants are not subject to Section 16(b) liability as directors by deputization or beneficial owners because they did not hold such statutory status when they last bought BBBY shares under the governing SEC rules. *Id.*, ECF Nos. 12, 14; *Cohen*, No. 22-cv-09733, ECF No. 16. At that time, BBBY told the court that it "join[ed] in" the Cohen Defendants' requests to dismiss the claims and deny leave for summary judgment and therefore "adopt[ed] the arguments contained in the pre-motion letters submitted by [RCV] on November 23, 2022 and December 2, 2022." *Id.*, ECF 19; *Cohen*, No. 22-cv-09733, ECF 22 (joining the Cohen Defendants' pre-motion letter to dismiss the complaint). As BBBY further explained, "[f]or the reasons set forth in those letters, the complaint fails to state a claim." *In re BBBY*, No. 22-cv-09327, ECF 19.

After the bankruptcy court confirmed BBBY's Chapter 11 bankruptcy plan in September 2024, Plaintiff reversed course and attempted to substitute in as plaintiff while the Cohen Defendants' motion to dismiss was pending. *In re BBBY*, No. 22-cv-09327, ECF 82-85. Following briefing, the court granted the Cohen Defendants' motion to dismiss the consolidated case for lack of subject matter jurisdiction and denied Plaintiff's motion to substitute. *Id.*, ECF 96 at 11-13.

Plaintiff commenced this case on August 1, 2024, asserting exactly the same arguments it previously rejected as "not giv[ing] rise to liability under Section 16(b)" and seeking profits that "are not recoverable under Section 16(b)." The Cohen Defendants requested, and were granted, leave to move to dismiss the original complaint. ECF 16. The Court also granted Plaintiff leave to file an amended complaint on or before November 8, 2024. *Id.* Plaintiff filed the FAC, and the Cohen Defendants sought and were granted leave to file this motion to dismiss.

## LEGAL STANDARDS

### A.    Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). To be plausible, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts must draw all reasonable inferences in plaintiff's favor and assume all well-pleaded factual allegations to be true, they are not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins.,* 648 F.3d 98, 104 (2d Cir. 2011) (citation omitted).

### B.    Section 16(b)

Section 16(b) requires certain individuals defined as "insiders" to "disgorge short-swing profits obtained by trading in the securities of the corporation." *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 125 (2d Cir. 2018) (citing 15 U.S.C. § 78p(b)). To state a claim under Section 16(b), "a plaintiff must plausibly allege that 'there was (1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities, (4) within a six-month period.'" *Id.* (quoting *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998)). Because Section 16(b) is a "strict

liability" statute, courts are "reluctant to exceed a literal, 'mechanical' application of the statutory text in determining who may be subject to liability." *Id.* at 126. The "strict liability remedy should be employed cautiously to avoid unfair application." *Id.*; *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 544, 551 (S.D.N.Y. 2014) (Section 16(b) is "a blunt instrument" and "must be confined within narrowly drawn limits"). This comports with the general principle that strict liability statutes should be interpreted narrowly and against liability. *See, e.g.*, *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) (statutes that "give[] rise to liability more readily" apply "more narrowly").

## ARGUMENT

The FAC fails to state a Section 16(b) claim and should be dismissed. Plaintiff's claim is premised on two theories: (1) the Cohen Defendants were "directors by deputization," and (2) the Cohen Defendants should have known they were beneficial owners of more than 10% of BBBY stock at the time of some purchases. Neither theory withstands scrutiny. First, even if the Cohen Defendants deputized the New Directors (they did not), they still cannot be liable under the applicable SEC rule because they did not buy any BBBY shares after the New Directors were appointed. Second, the Cohen Defendants relied on BBBY's most recent share count disclosure to determine that they were not beneficial owners of more than 10% of BBBY's outstanding shares in compliance with the applicable SEC rule. Thereafter, BBBY separately confirmed the Cohen Defendants' calculation to both to the Cohen Defendants and the investing public. There are no well pled allegations that the Cohen Defendants should have known BBBY's actual outstanding share count. Finally, in all events, the Cohen Defendants are exculpated under Section 23 of the Exchange Act for relying in good faith on the SEC rules. For all these reasons, Plaintiff's case should be dismissed under Rule 12(b)(6).

I.    **Plaintiff Fails to State a Section 16(b) Claim Against the Cohen Defendants as Directors by Deputization.**

Plaintiff does not allege that the Cohen Defendants were directors of BBBY. Instead, Plaintiff alleges that the Cohen Defendants must be deemed directors by deputization as of the date the New Directors joined the BBBY Board. FAC ¶ 125. But those allegations simply cannot support Plaintiff's deputization theory because a director, including a director by deputization, is not liable under Section 16(b) for transactions that predate their directorship. The Cohen Defendants made their last purchase of BBBY shares three weeks before the New Directors were appointed, meaning there were no Section 16(b) purchases. Absent Section 16(b) purchases, there can be no liability. Separately, Plaintiff fails to even allege the minimum elements necessary to support its argument that the Cohen Defendants deputized the New Directors, including that the Cohen Defendants both received material nonpublic information from the New Directors and used such information to inform their investment strategy. Plaintiff therefore fails to state a Section 16(b) claim against the Cohen Defendants as directors by deputization on these two independent bases.

A.    **Plaintiff Fails to Allege that the Cohen Defendants Bought BBBY Shares While Directors by Deputization.**

Plaintiff's deputization theory fails for a simple reason: Plaintiff has not alleged that the Cohen Defendants bought BBBY shares while they were allegedly deemed to be statutory directors. This is because the Cohen Defendants did not enter into the Cooperation Agreement through which the New Directors were appointed until three weeks *after* their last purchase of BBBY shares. That dooms Plaintiff's deputization theory.

Directors generally are not liable under Section 16(b) for transactions that occurred before they became directors. 15 U.S.C. § 78p(b). Indeed, as the Second Circuit has explained, "with the exception of one circumstance not relevant here, Section 16(b) liability does not extend to

individuals who were neither directors nor other insiders of the issuer when they acquired their issuer equity securities." *Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC*, 298 F.3d 136, 141 & n.3 (2d Cir. 2002) (citing 17 C.F.R. § 240.16a-2(a)).

Rule 16a-2(a) provides that a director is not liable for transactions predating its directorship unless those transactions occur in the six months before the issuer's initial Section 12 registration:

> A transaction(s) carried out by a director or officer in the six months prior to the director or officer becoming subject to section 16 of the Act shall be subject to section 16 . . . *only if* the transaction(s) occurred within six months of the transaction giving rise to the Form 4 filing obligation *and* the director or officer became subject to section 16 of the Act solely as a result of the issuer registering a class of equity securities pursuant to section 12 of the Act.

17 C.F.R. § 240.16a-2(a) (emphasis added). Courts therefore dismiss Section 16(b) claims predicated on transactions that predate a defendant's directorship unless the transaction meets this exception. *See Gryl v. Shire Pharms. Grp. PLC*, No. 00 Civ 9173, 2001 WL 1006628, at *2 (S.D.N.Y. Aug. 31, 2001) (dismissing Section 16(b) claim because "Rule 16a-2 provides that a director is not liable under 16(b) for a transaction that took place prior to his or her becoming a director"). It is undisputed that the Cohen Defendants' prior purchases do not fall within this exception of Rule 16a-2(a), so the only relevant inquiry is whether the Cohen Defendants bought BBBY shares after the date Plaintiff alleges they became statutory directors. They did not.

Plaintiff alleges that "the Cohen Defendants were deemed statutory directors of BBBY at all times *from the appointment* of the [New Directors] through the[ir] departure from BBBY's board." FAC ¶ 125 (emphasis added). The appointment of the New Directors—and thus the date on which Plaintiff alleges the Cohen Defendants became statutory directors—occurred on March 24, 2022 with the execution of the Cooperation Agreement. FAC Ex. B at 8 (Cooperation Agreement, dated March 24, 2022). But RCV last purchased BBBY shares on March 3, 2022. FAC Ex. A at 9 (Sched. A); FAC ¶ 163 & Table 1 (identifying that the RCV's last purchase of

BBBY shares was on March 3, 2022). All of RCV's purchases therefore took place prior to the date on which Plaintiff alleges the Cohen Defendants became statutory directors. As a result, the plain language of Rule 16a-2(a) forecloses Plaintiff's deputization theory because the Cohen Defendants cannot be held liable for transactions taking place prior to their purported directorship. *Gryl*, 2001 WL 1006628, at *2.

Notwithstanding the black letter law here making Plaintiff's "director by deputization" theory dead on arrival, Plaintiff continues to assert that the Court need not even *consider* these deficiencies in assessing this motion. ECF 15 n.3; ECF 19 n.2. This attempt to dodge compelling black letter law is wholly unavailing.

### B. Plaintiff Fails to Allege that the Cohen Defendants Deputized the New Directors.

Plaintiff's deputization theory fails for a second, independent reason: Plaintiff does not allege the necessary facts to support a "director by deputization" theory of liability. Under this doctrine, an investor becomes "a statutory insider when it deputizes an individual to serve as its representative on an issuer's board of directors." *Rubenstein v. Int'l Value Advisers*, LLC, 959 F.3d 541, 550 (2d Cir. 2020). The leading treatise on Section 16(b) has explained the requirements for showing that an investor is a director by deputization as follows:

> [T]he weight of authority suggests that an entity will be deemed a director by deputization only if, at a minimum, the follow facts are present:
>
> (1)    Whether the shareholding entity recommended the director for election or appointment to the board;
>
> (2)    Whether the shareholding entity recommended the director for the purpose of protecting or representing the entity's interests rather than for the purpose of guiding or enhancing the issuer's business activities;
>
> (3)    Whether the director regularly gained access to material nonpublic information about the issuer;

(4)     Whether the director shared the confidential information with the shareholding entity; and

(5)     Whether the shareholding entity used the information to inform its investment strategy regarding the issuer's securities.

Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.04[5] (collecting cases). An investor "is more likely to be deemed a director by deputization if the appointed director has a relationship with the [investor] (e.g., as an employee or principal) that either (1) allows the [investor] to influence the director's decisions as a director or (2) allows the director to influence the [investor's] investment decisions regarding the issuer." *Id.* But "the mere presence of an issuer's board of a person who is associated with an" investor "is insufficient by itself to establish" that the investor is a director by deputization. *Id.*; *accord Blau v. Lehman*, 368 U.S. 403, 409 (1962).

Plaintiff's deputization theory fails because it alleges no facts to support a reasonable inference that the Cohen Defendants recommended the New Directors to protect the Cohen Defendants' interests rather than BBBY's business activities. Plaintiff likewise alleges no facts to suggest that the New Directors shared material nonpublic information with the Cohen Defendants, or that the Cohen Defendants' investment strategy was informed by such information. For each of these reasons, Plaintiff's deputization theory fails and the FAC should be dismissed.

*First*, Plaintiff does not even attempt to allege that the Cohen Defendants recommended the New Directors "for the purpose of protecting or representing" the Cohen Defendants' "interests rather than for the purpose of guiding or enhancing the issuer's business activities," a necessary element for a director by deputization claim. *Id.* This alone defeats Plaintiff's theory.

*Second*, Plaintiff does not adequately allege that the New Directors shared material nonpublic information with the Cohen Defendants. Plaintiff claims in conclusory fashion that the New Directors provided "some" confidential information to the Cohen Defendants. *Id.* ¶ 58. Yet Plaintiff's only support for this claim is that Mr. Cohen had phone calls with Mr. Rosenzweig and

one Zoom meeting with Ms. Lombard in April and May 2022. *Id.* ¶¶ 59-61. These allegations do not support a reasonable inference that the New Directors shared material nonpublic information with the Cohen Defendants, especially given that Mr. Rosenzweig testified that no such information was shared. *Id.* ¶ 60. His testimony is consistent with the restrictions placed on the New Directors under the Cooperation Agreement, which expressly prohibited them from sharing this type of information with the Cohen Defendants. FAC Ex. B at 11 (Section 1(d)) (requiring the appointed directors "to strictly adhere to the policies on confidentiality, insider trading and conflicts of interest imposed on all members of the Board"). Plaintiff otherwise alleges no facts showing or creating a reasonable inference that the New Directors actually shared material nonpublic information with the Cohen Defendants.

To the contrary, the only reasonable inference from the FAC is that the Cohen Defendants were *not* provided such information by the New Directors. Plaintiff's allegations make clear that: (1) the other BBBY directors rejected the New Directors' alleged recommendation to share more information with Mr. Cohen (FAC ¶¶ 44-50); (2) the only specific material nonpublic information allegedly shared with the Cohen Defendants came from individuals other than the New Directors, such as the Chair of the Board and BBBY executives (*id.* ¶¶ 66-73; 88-90); and (3) these other individuals rebuffed Mr. Cohen's alleged requests for material nonpublic information. (*id.* ¶¶ 74-86, 91-99). Moreover, Plaintiff itself recognizes that Mr. Cohen repeatedly stated that he did not want material nonpublic information from these other individuals. *See, e.g., id.* ¶ 79 (alleging that Mr. Cohen "stress[ed] that he wanted 'nothing about the quarter or restricted information'"). Plaintiff likewise cannot rely on conclusory speculation that it attributes to BBBY management or Jim Cramer that the Cohen Defendants received material nonpublic information from the New Directors. *Id.* ¶¶ 105-122. Indeed, even Plaintiff recognizes that some of this speculation was

"incorrect." *Id.* ¶ 105. Plaintiff has thus failed to adequately allege that the New Directors provided the Cohen Defendants with material nonpublic information to show that they were deputized.

*Third*, because Plaintiff has not adequately alleged that the New Directors provided the Cohen Defendants with material nonpublic information, it necessarily fails to plead that the Cohen Defendants used any such information to inform its investment strategy. However, Plaintiff's inability to plead this element fails for another reason: its only allegations on this element are based on pure conjecture from a television personality and cryptic reactions of certain BBBY employees to those comments. *Id.* ¶¶ 106-107, 116-122. These speculative allegations do not plausibly suggest that the Cohen Defendants acted on material nonpublic information provided by the New Directors. This is especially true in light of Mr. Rosenzweig's sworn testimony that they did not provide such information and Plaintiff's inability to allege a single instance in which the New Directors actually did so. Plaintiff has thus also failed to adequately allege that the Cohen Defendants made investment decisions based on material nonpublic information provided by the New Directors.

For these reasons, Plaintiff's deputization theory independently fails because it has not adequately alleged the minimum factors necessary to deem the Cohen Defendants directors by deputization.

## II.    Plaintiff Fails to State a Section 16(b) Claim Against the Cohen Defendants as Beneficial Owners.

Plaintiff's beneficial owner theory fails because Plaintiff does not adequately allege that the Cohen Defendants were greater than 10% beneficial owners when they purchased the shares.

### A.    To Be a "Beneficial Owner," an Investor Must Have Actual or Constructive Knowledge that It Beneficially Owns More Than 10% of an Issuer's Outstanding Shares.

Under Section 16(b), an investor is liable for short-swing profits only if the investor was a

beneficial owner *both* when it purchased and sold the relevant securities. *See* 15 U.S.C. § 78p(b) ("This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale[.]"); *see also Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 249-50 (1976) ("We hold that, in a purchase–sale sequence, a beneficial owner must account for profits only if he was a beneficial owner 'before the purchase.'").

The SEC regulations governing whether a party is a beneficial owner under Section 16(b) are clear. Section 16(b) itself "does not define the term 'more than 10% beneficial owner.'" *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001). Instead, SEC Rule 16a-1 defines "beneficial owner" to mean "any person who is deemed a beneficial owner pursuant to Section 13(d) of the [Exchange] Act and the rules thereunder." *Lowinger v. Morgan Stanley & Co.*, 841 F.3d 122, 130 (2d Cir. 2016) (alteration in original) (quoting 17 C.F.R. § 240.16a-1(a)(1)).

Section 13(d) "and the rules thereunder" permit an investor to rely on an issuer's most recent public disclosures to calculate its beneficial ownership under Section 13(d):

> For the purpose of sections 13(d) and 13(g), any person, in determining the amount of outstanding securities of a class of equity securities, *may rely upon information set forth in the issuer's most recent quarterly or annual report*, and any current report subsequent thereto, filed with the Commission pursuant to this Act, *unless he knows or has reason to believe that the information contained therein is inaccurate.*

17 C.F.R. § 240.13d-1(j) (emphasis added); *see also SEC v. Nutra Pharma Corp.*, No. 18 Civ. 5459, 2022 WL 3912561, at *13 (E.D.N.Y. Aug. 31, 2022) ("The number of outstanding shares found in the company's most recent quarterly, annual, or current reports filed with the SEC is used to calculate whether [Section 13(d)'s] 1% or 5% thresholds have been reached.") (citing 17 C.F.R. § 240.13d-1(j)). Because Section 16(b) defines a beneficial owner "pursuant to Section 13(d) of the [Exchange] Act and the rules thereunder," Rule 13d-1 governs how to determine whether an

investor is a greater than 10% beneficial owner of an issuer. 17 C.F.R. § 240.16a-1(a)(1); *see also C.R.A. Realty Corp. v. Enron Corp.*, 842 F. Supp. 88, 91 (S.D.N.Y. 1994) ("The intent of the SEC to define 'ten percent' under Section 16 as it is defined under Section 13(d) could not be clearer."). Rule 13d-1 has been in place for decades and investors routinely rely on it to determine whether they are subject to Section 16 reporting obligations and short-swing liability.

Under Rule 13d-1, even if an investor beneficially owns more than 10% of an issuer's shares, it is not a beneficial owner subject to Section 16(b) liability, so long as it: (1) beneficially owns 10% or less of the number of outstanding shares disclosed in the issuer's most recent SEC filing; and (2) could not have known, based on public filings, that it beneficially owns more than 10% of the issuer's outstanding shares. 17 C.F.R. § 240.13d-1(j); *C.R.A. Realty Corp.*, 842 F. Supp. at 91 ("Although the newly available information indeed reveals that [defendant] held ten percent of Enron's convertible preferred stock on December 31, 1991, [defendant's] ownership on that date does not subject it to disgorgement of short-swing profits because [defendant] had no way of knowing of its ten percent status at that time."). Put differently, an investor who "is not a ten percent owner based on" the issuer's most recent SEC filing "is free to engage in transactions in the issuer's securities *without regard for Section 16*" until a new SEC filing shows "a reduction in the number of shares outstanding sufficient to make the person a ten percent owner"—unless "the person otherwise knows that he or she has become a ten percent owner." Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.03(3)(j)(iv) (emphasis added); *see also* SEC Division of Corporation Finance, Compliance and Disclosure Interpretations, Exchange Act Section 16 and Related Rules and Forms, Interp. 209.02 (May 23, 2007) (investor becomes a "beneficial owner" under Rule 16a-1 "within ten days after information in the company's most recent quarterly, annual or current report indicates the amount of securities outstanding following the buy-back" brought

them above 10% "[i]f the person does not have advance awareness of the buy-back and/or its consequences").

**B.  Plaintiff Does Not Adequately Allege that the Cohen Defendants Knew or Should Have Known that They Beneficially Owned More Than 10% of BBBY's Shares.**

Plaintiff does not allege facts showing that the Cohen Defendants had actual or constructive knowledge that RCV beneficially owned more than 10% of BBBY's outstanding shares when RCV purchased shares between February 22 and March 3, 2022. On March 7, 2022, the Cohen Defendants filed the March 7 Schedule 13D disclosing RCV's beneficial ownership of 9,450,100 BBBY shares, or 9.8% of outstanding shares. FAC Ex. A at 6 (Item 5(a)). That filing makes clear that the Cohen Defendants calculated this beneficial ownership percentage based on the number of shares reported in BBBY's November 27, 2021 quarterly report—the most recent share count disclosure available at the time of RCV's final share purchases on March 3, 2022. *Id.* (ownership percentage "based upon 96,337,713 Shares outstanding as of November 27, 2021 as reported in the Issuer's Quarterly Report on Form 10-Q").[3] As discussed above, Rule 13d-1 makes clear that the Cohen Defendants were entitled to rely on the share count in BBBY's November 27, 2021 quarterly report, unless they knew or should have known that the share count was inaccurate. 17 C.F.R. § 240.13d-1(j).

Plaintiff does not adequately allege that the Cohen Defendants actually knew that the share

---

[3] SEC filings show that six other entities made Section 13 filings in the month of February 2022, each relying on the same share count from the Quarterly Report to calculate their percent interest. *See*, *e.g.*, https://www.sec.gov/Archives/edgar/data/895421/000089542122000132/0000895421-22-000132-index.html (Morgan Stanley disclosing a 7.3% interest at 7,011,265 shares); https://www.sec.gov/Archives/edgar/data/1364742/000083423722007880/0000834237-22-007880-index.html (BlackRock disclosing a 17.2% interest at 16,527,076 shares); https://www.sec.gov/Archives/edgar/data/1009268/000110465922022706/0001104659-22-022706-index.html (D.E. Shaw & Co, L.P. disclosing a 0.6% interest at 552,294 shares).

count in BBBY's November 27, 2021 quarterly report was inaccurate when RCV purchased additional shares between February 22 and March 3, 2022. Nor could it. While BBBY's total outstanding shares allegedly had been reduced to 81,979,000 shares as of February 26, 2022, BBBY did not publicly disclose the share count reduction until April 21, 2022—almost *fifty* days after RCV's last purchases of BBBY shares. *Compare* FAC Ex. A at 9 (Sched. A) (identifying RCV's last purchases on March 3, 2022) *and* FAC ¶ 163 & Table 1 (same), *with* Dillan Decl. Ex. 3 at 8 (identifying on April 21, 2022 the common stock outstanding as of February 26, 2022). Indeed, BBBY itself agreed with the Cohen Defendants' calculation of RCV's beneficial ownership percentage in both the Cooperation Agreement on March 24, 2022, and in its communications to the market on March 25, 2022. In the Cooperation Agreement, which BBBY signed and filed with the SEC, BBBY agreed that RCV beneficially owned "9.8% of the Common Stock issued and outstanding on the date hereof [March 24, 2022]." FAC Ex. B at 8. And in its press release, which BBBY attached to its Form 8-K filed with the SEC on March 25, 2022, BBBY confirmed that the Cohen Defendants were "the beneficial owners of approximately 9.8% of the Company's outstanding shares." *Id.* at 23. Accordingly, Plaintiff's allegations fail to carry its burden to support a reasonable inference of actual knowledge. Not only would its theory have required the Cohen Defendants to have access to information solely in BBBY's possession regarding the status of its general buyback program, but it would also require finding that the Cohen Defendants could not rely upon BBBY's own acknowledgement that 9,450,100 shares represented 9.8% of BBBY's outstanding stock as of March 24, 2022, three weeks after the last purchases. BBBY repeated this 9.8% representation BBBY in its subsequent SEC filings. Plaintiff's proposition is, in a word, absurd.

Plaintiff seeks to impose constructive knowledge on the Cohen Defendants based solely on

BBBY's announcement of its accelerated share repurchase program and heavily caveated expectations about when it might be completed. FAC ¶¶ 129-150. In doing so, Plaintiff asks the Court to require investors to guess at their beneficial ownership percentage based generally announced strategic plans. There is no support for this requirement. Indeed, as the leading Section 16(b) treatise explains, "an issuer's announcement of a stock repurchase program is not enough to charge a person with knowledge of the precise date on which the issuer later repurchases enough of its outstanding shares to push that person over the ten percent threshold." Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.03(3)(j)(iv) n.77. The facts surrounding BBBY's repurchase announcement illustrate the sound rationale for this rule. The Cohen Defendants could not know the exact timing and amount of BBBY's share repurchases when RCV bought BBBY shares in February and March 2022 for three reasons.

*First*, BBBY's public filings expressly warned that its announced share repurchase program might not take place on the anticipated timeline or at all. *See* Ex. H at 3 (repurchases subject to "a variety of factors, including price, general business and market conditions, and alternative investment opportunities"); Dillan Decl. Ex. 1 at 6 ("The Company's share repurchase program could change and . . . [a]ny future share repurchases will be subject to the determination of the Board of Directors, based on an evaluation of the Company's earnings, financial condition and requirements, business conditions and other factors[.]").

*Second*, BBBY expressed the scale of its repurchases only in dollars and not in the number of shares repurchased. Dillan Decl. Ex. 4 (Bed Bath & Beyond Inc., Current Rep., Ex. 99.2 (Form 8-K) (Jan. 6, 2022)) (Q4 2021 repurchased estimated at $275 million); FAC ¶ 140 (BBBY "expected to complete the Accelerated Share Repurchase program by purchasing around $275 million worth of stock in just the fourth quarter"). That made it impossible to predict exactly how

many shares BBBY would repurchase based on the estimated dollar amount because its stock price fluctuated significantly and constantly throughout the relevant period. FAC ¶¶ 141-143 (alleging that BBBY's stock price was anywhere from $16.18 to $25.72 between November 2021 and March 4, 2022); Dillan Decl. Ex. 5 (BBBY Advanced Charting).[4]

*Third*, Plaintiff's theory would need to assume that BBBY completed the program on time by February 26, 2022, which it did not. Dillan Decl. Ex. 2 at 4 (stating that the repurchase program was not completed until March 2022). Plaintiff claims the Cohen Defendants could have simply divided the announced repurchase amount by BBBY's highest share price during this time to determine the minimum number of shares that would have been repurchased. FAC ¶¶ 144-147. This assertion ignores both BBBY's express warning that it may not complete the share repurchase program on time and that it, in fact, was not completed on time. These facts only highlight the absurdity in Plaintiff's proposal—if investors needed to guess about an issuer's share repurchase program before the issuer discloses a new share count, investors inevitably will file incorrect and inconsistent SEC disclosures if—indeed, when—those assumptions turn out to be wrong.

Moreover, as explained above, BBBY *itself* confirmed in its own SEC filings on March 24 and 25, 2022—three weeks after RCV's last purchases—that RCV still beneficially owned only 9.8% of its outstanding shares. Plaintiff's allegation that the Cohen Defendants should have known that RCV beneficially owned more than 10% of BBBY's outstanding shares when it made the final purchases is nonsensical because BBBY itself confirmed in its SEC filings to the market three weeks later that RCV did not.

For all these reasons, "[i]t would be unjust and would not promote the purpose of Section

---

[4] Courts may consider publicly available stock price data upon a motion to dismiss. *See Stratte-McClure v. Morgan Stanley*, 598 F. App'x 25, 27 (2d Cir. 2015) (summary order).

16(b) to treat" RCV "as a company insider, subject to disgorgement, at a time when" it "was unable to know of that status and behave accordingly." *C.R.A.*, 842 F. Supp. at 91; *see also Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 404, 418 (1972) (investors are entitled to "structure[]" their "transaction[s] with the intent of avoiding liability" as long as "the method used to 'avoid' liability is one permitted by the statute"). To impose liability under Section 16(b) based on unconfirmed, imprecise, and highly caveated, announced plans of the issuer would radically expand the obligations of investors under this strict liability statute and violate the mandate that it be applied "cautiously" and "narrowly." *Packer v. Raging Cap. Mgmt., LLC*, 981 F.3d 148, 154 (2d Cir. 2020); *see also Rubenstein v. vTv Therapeutics, Inc.*, No. 15 Civ. 9752, 2017 WL 1194688, at *3 (S.D.N.Y. Mar. 30, 2017) (Section 16(b) is "construed narrowly to favor the insider"). Plaintiff's position would place an impossible burden on investors to divine the number of outstanding shares at any given time at the risk of a strict liability regime. As courts and the SEC have made clear, that is simply not the law.

For these reasons, Plaintiff's beneficial owner theory fails. It is undisputed that, at the time RCV made its final purchases of BBBY shares, it was not a beneficial owner of more than 10% of BBBY's outstanding shares according to BBBY's most recent share count disclosure. And Plaintiff has failed to adequately allege that the Cohen Defendants knew or should have known that the information in that share count disclosure was inaccurate at the time of these purchases. Accordingly, under Rule 13d-1, the Cohen Defendants were not greater than 10% beneficial owners within the meaning of Section 16(b) and cannot be held liable on that basis. *C.R.A. Realty Corp.*, 842 F. Supp. at 91.

## III.    The Cohen Defendants Are Exculpated from Liability by Relying on the SEC Rules.

Section 23(a) of the Exchange Act provides that "[n]o provision of this chapter [i.e., the Exchange Act] imposing any liability shall apply to any act done or omitted in good faith in

conformity with a rule, regulation, or order of the [SEC] . . . notwithstanding that such rule, regulation, or order may thereafter be amended or rescinded or determined by judicial or other authority to be invalid for any reason." 15 U.S.C. § 78w(a)(1). As explained above, the Cohen Defendants acted in conformity with the SEC rules in determining that they were not directors or beneficial owners for Section 16(b) purposes. Because there are no well-pled allegations of bad faith, the Cohen Defendants are exculpated under Section 23(a) even if these rules were subsequently repealed or invalidated. *See, e.g.*, *C.R.A.*, 842 F. Supp. at 92 ("Because Rule 13d-1(e) is relied upon by investors when they make investment decisions, the court should look only to the information available at the time of [defendant's] actions when determining [defendant's] liability for those actions. This approach is consistent with Section 23(a)(1) of the Act . . . No evidence suggests that [defendant] failed to act in good faith and in conformity with Rule 13d-1(e) during the period in question."); *Van Aalten v. Hurley*, 176 F. Supp. 851, 855 (S.D.N.Y. 1959) (explaining Section 23(a)'s "purpose is to broadly protect those who understandably rely upon a duly promulgated rule of an administrative agency, notwithstanding that such rule is thereafter invalidated."). For this independent reason, the Cohen Defendants cannot be held liable under Section 16(a) for relying on the SEC rules set forth above in determining that they were not "directors by deputization" or beneficial owners.

## CONCLUSION

Plaintiff fails to state a claim under Section 16(b) against the Cohen Defendants. Section 16(b) imposes strict liability on statutory insiders only where the investor is an insider both at the time of purchase and sale. The Cohen Defendants were neither directors by deputization nor greater than 10% beneficial owners when they last purchased BBBY shares, and these purchases therefore cannot be matched with the August 2022 sales. The Court should dismiss the FAC with prejudice and grant any such other relief as the Court deems just and proper.

Dated:  December 9, 2024

Respectfully submitted,

WOLLMUTH MAHER & DEUTSCH LLP

*/s/ Joshua M. Slocum*
Joshua M. Slocum
Maxwell G. Dillan
Jocelyn M. Stuto
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
jslocum@wmd-law.com
mdillan@wmd-law.com
jstuto@wmd-law.com

*Attorneys for Defendants Ryan Cohen*
*and RC Ventures LLC*