# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE BED BATH & BEYOND INC. SECTION 16(b) LITIGATION |

Case No. 1:22-cv-09327-DEH

**RC VENTURES LLC AND RYAN COHEN'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**AMENDED OMNIBUS MOTION TO DISMISS THE COMPLAINTS**

WOLLMUTH MAHER & DEUTSCH LLP

David H. Wollmuth
Joshua M. Slocum
Maxwell G. Dillan
Yating Wang
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
dwollmuth@wmd-law.com
jslocum@wmd-law.com
mdillan@wmd-law.com
ywang@wmd-law.com

*Attorneys for Defendants RC Ventures LLC and Ryan Cohen*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

    A.    The Parties. .......................................................................................................... 3

    B.    RCV Purchases BBBY Securities Between January and March 2022. ................ 3

    C.    RCV Enters into a Cooperation Agreement with BBBY in March 2022. ............ 4

    D.    In April 2022, BBBY Discloses a Reduced Share Count Due to Share Repurchases. ........................................................................................................ 5

    E.    RCV Sells Its BBBY Securities in August 2022. ................................................. 6

    F.    The BBBY Board Rejects Plaintiffs' Demands .................................................... 7

    G.    BBBY Files for Chapter 11 Bankruptcy and the Bankruptcy Court Confirms the Chapter 11 Plan. ............................................................................................. 7

    H.    Procedural History ............................................................................................... 8

LEGAL STANDARDS ........................................................................................................... 9

    A.    Rule 12(b)(1) ........................................................................................................ 9

    B.    Rule 12(b)(6) ........................................................................................................ 9

    C.    Section 16(b) ...................................................................................................... 10

ARGUMENT ......................................................................................................................... 11

I.    The Court Lacks Subject Matter Jurisdiction Because Plaintiffs No Longer Have a Financial Interest in the Outcome of These Cases. ...................................................... 11

    A.    Plaintiffs No Longer Have a Financial Interest in the Outcome of These Cases Because Their Common Stock in BBBY Was Canceled. ........................... 11

    B.    Plaintiffs' Attempts to Manufacture Subject Matter Jurisdiction Despite Their Lack of a Financial Interest Fail. ................................................................ 13

II.    Plaintiffs Fail to State a Section 16(b) Claim Because the Cohen Defendants Were Not Statutory Insiders When They Acquired the Stock. ................................................. 15

    A.    Plaintiffs Fail to State a Section 16(b) Claim for Short-Swing Profits Against the Cohen Defendants as "Beneficial Owners." ..................................... 15


1. To Be a "Beneficial Owner," a Defendant Must Have Actual or Constructive Knowledge that It Holds More Than Ten Percent of a Company's Outstanding Shares. ...........................................................16

2. Plaintiffs Do Not Plausibly Allege that the Cohen Defendants Knew or Should Have Known that RCV Held More Than Ten Percent of BBBY's Shares When It Purchased BBBY Stock. .................................18

B. Plaintiffs Fail to State a Section 16(b) Claim for Short-Swing Profits Against the Cohen Defendants as Directors. ......................................................21

1. RCV Did Not Deputize Directors via the Cooperation Agreement. ..........21

2. Even If RCV Deputized Directors, It Still Would Not Be Liable for Short-Swing Profits Under Section 16(b). ...............................................23

a. Under SEC Rules, Section 16(b) Does Not Apply to Directors' Transactions Before They Became Directors. .............24

b. All RCV's BBBY Purchases Predate the Cooperation Agreement. ....................................................................24

c. RCV Can Rely on the D/O Exemption. .......................................25

i. RCV is exculpated under Section 23(a). .........................25

ii. *Adler* Does Not Foreclose the D/O Exemption.................26

iii. The Exemption Is Entitled to *Chevron* Deference. ...........27

CONCLUSION...........................................................................................................................29

Case 1:24-cv-05912-NRB   Document 252    Filed 10/13/25   Page 4 of 36

BBBY and RCV agreed to certain standstill provisions under the Cooperation Agreement, (3) the Cohen Defendants stated publicly that BBBY was "willing to promptly embrace our ideas," and (4) a news article reported that the Cohen Defendants "pushed the [BBBY] Board" to fire its CEO, "it is reasonably inferable" that the New Directors performed their duties for the Cohen Defendants. *See* Cohen Am. Compl. ¶¶ 32-26. But Plaintiff Cohen does not explain why these allegations support this inference and no plausible explanation is apparent. Similarly, the fact that the New Directors sat on a committee of independent directors tasked with reviewing strategic alternatives for buybuy BABY, *id.* ¶ 32, supports the inference that they were "guiding or enhancing the issuer's business activities," rather than protecting the Cohen Defendants' interests. And despite the Cohen Defendants' alleged focus on a "disposition of the buybuy BABY business segment," *id.*, and the New Directors seats on the strategy committee, Plaintiff Cohen does not allege (nor could she) that the business was ever sold.[9]

Plaintiffs' "director by deputization" theory is thus unsupported by any factual allegations and cannot support a Section 16(b) claim.

### 2. Even If RCV Deputized Directors, It Still Would Not Be Liable for Short-Swing Profits Under Section 16(b).

Even if RCV "deputized" the New Directors, it still would not qualify as a statutory insider under Section 16(b) at the time of its purchases of BBBY shares. This is because RCV did not

---

[9] Plaintiff Cohen also alleges that the sales at issue were timed in advance of adverse events for BBBY, leading to the "inference" that RCV sold because it was acting on inside information. *Id.* ¶ 60. That RCV sold before an already-floundering BBBY experienced further difficulties hardly supports this inference. This is especially true considering that the Cooperation Agreement did not give RCV any information rights and expressly prohibits the New Directors from sharing confidential information with the Cohen Defendants. *See* Slocum Decl. Ex. 2 § 1(d) (requiring the appointed directors "to strictly adhere to the policies on confidentiality, insider trading and conflicts of interest imposed on all members of the Board"). Neither Plaintiff alleges that the New Directors violated this provision, or their obligations as directors, by providing the Cohen Defendants with inside information.

23

enter into the Cooperation Agreement through which it appointed the New Directors until three weeks *after* its last purchase of BBBY securities.

        **a.    Under SEC Rules, Section 16(b) Does Not Apply to Directors' Transactions Before They Became Directors.**

Directors and officers generally are not liable under Section 16(b) for transactions that occurred before they became directors or officers. Under SEC regulations, there is only a "single circumstance in which an individual can be held liable for short-swing transactions conducted prior to his becoming an officer or director of the issuer." *Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC*, 298 F.3d 136, 141 n.3 (2d Cir. 2002) (citations omitted). The governing SEC regulation provides that a director is not liable for transactions predating its directorship unless they occur in the six months before the issuer's initial Section 12 registration:

> A transaction(s) carried out by a director or officer in the six months prior to the director or officer becoming subject to section 16 of the Act shall be subject to section 16 of the Act and reported on the first required Form 4 *only if* the transaction(s) occurred within six months of the transaction giving rise to the Form 4 filing obligation *and* the director or officer became subject to section 16 of the Act solely as a result of the issuer registering a class of equity securities pursuant to section 12 of the Act.

17 C.F.R. § 240.16a-2(a) (emphasis added) (the "D/O Exemption"). Courts dismiss Section 16(b) claims predicated on a transaction that predates a defendant's directorship unless the transaction meets this requirement. *See Gryl v. Shire Pharms. Grp. PLC*, No. 00 Civ 9173, 2001 WL 1006628, at *2 (S.D.N.Y. Aug. 31, 2001) (dismissing because "a director is not liable under 16(b) for a transaction that took place prior to his or her becoming a director").

        **b.    All RCV's BBBY Purchases Predate the Cooperation Agreement.**

The D/O Exemption bars Plaintiffs' claims even if their "director by deputization" theory were correct. RCV's last BBBY share purchases predated its execution of the Cooperation Agreement under which it appointed the New Directors by several weeks. *Compare* Slocum Decl.

24

Ex. 2 (Cooperation Agreement dated March 24, 2022), *with* Augen. Compl. ¶ 9 (RCV's last purchase on March 3, 2022). And RCV did not become subject to Section 16 solely as a result of BBBY registering securities under Section 12. The "single circumstance" under the D/O Exemption in which a party can be held liable for transactions predating its directorship thus does not exist here even if RCV deputized the New Directors. *Gryl ex rel. Shire Pharms.*, 298 F.3d at 141 n.3.

### c. RCV Can Rely on the D/O Exemption.

Plaintiffs argue that RCV cannot rely on the D/O Exemption because it conflicts with a Second Circuit decision from 1959 interpreting Section 16(b)'s text. *See* Augen. Compl. ¶¶ 30-31 (citing *Adler v. Klawans*, 267 F.2d 840 (2d Cir. 1959)); *see also* ECF No. 46 at 14-16; ECF No. 49 at 20-22. Plaintiffs claim the D/O Exemption exceeded the SEC's rulemaking authority and thus RCV cannot rely on it in determining Section 16 reporting obligations and short-swing liability. *Id.* Plaintiffs are wrong.

#### i. RCV is exculpated under Section 23(a).

As an initial matter, Plaintiffs' attempts to impose liability on RCV for relying on an allegedly invalid SEC regulation conflicts with Section 23(a) of the Exchange Act. Section 23(a) provides that "[n]o provision of this chapter [i.e., the Exchange Act] imposing any liability shall apply to any act done or omitted in good faith in conformity with a rule, regulation, or order of the [SEC] . . . notwithstanding that such rule, regulation, or order may thereafter be amended or rescinded or determined by judicial or other authority to be invalid for any reason." 15 U.S.C. § 78w(a)(1). As explained above, RCV acted in conformity with the D/O Exemption in determining that it was not a director for Section 16(b) purposes. Because there are no well-pled allegations of bad faith, the Cohen Defendants are exculpated under Section 23(a) even if the Court accepts Plaintiffs' argument that the D/O Exemption is invalid. *See, e.g.*, *C.R.A.*, 842 F. Supp. at 92

25

("Because Rule 13d-1(e) is relied upon by investors when they make investment decisions, the court should look only to the information available at the time of [defendant's] actions when determining [defendant's] liability for those actions. This approach is consistent with Section 23(a)(1) of the Act . . . No evidence suggests that [defendant] failed to act in good faith and in conformity with Rule 13d-1(e) during the period in question."); *Van Aalten v. Hurley*, 176 F. Supp. 851, 855 (S.D.N.Y. 1959) (explaining Section 23(a)'s "purpose is to broadly protect those who understandably rely upon a duly promulgated rule of an administrative agency, notwithstanding that such rule is thereafter invalidated.").

### ii. *Adler* Does Not Foreclose the D/O Exemption.

At any rate, Plaintiffs are wrong that the D/O Exemption is invalid under *Adler*. In 1959, the Second Circuit held that "Section 16(b) is applicable to a short-swing transaction even though the person involved was a director only at the time of the sale and not at the time of the purchase." *Adler*, 267 F.2d at 847. In so holding, the Second Circuit applied the "*expressio unius est exclusio alterius*" canon of construction. *Id.* at 845. It reasoned that because Section 16(b) says that it applies only when beneficial owners have such status at both the purchase *and* sale and does not say the same for directors and officers, Congress did not intend for Section 16(b) to apply in the same way to directors and officers. *Id.* In 1991, the SEC bridged the gap between these two categories of insiders by enacting the D/O Exemption, thus immunizing directors from Section 16(b) liability for purchases of a company's securities before becoming a director just like beneficial owners. *See* 17 C.F.R. § 240.16a-2(a).

*Adler* does not foreclose the D/O Exemption. "A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet*

26

*Servs.*, 545 U.S. 967, 982 (2005); *accord Hassoun v. Searls*, 968 F.3d 190, 199 (2d Cir. 2020). While the Second Circuit determined in *Adler* that a then-existing SEC regulation did not exempt directors from Section 16(b) liability for transactions prior to becoming directors, it left open the possibility that the SEC could adopt such a (contrary) regulation. *Adler*, 267 F.2d at 847 ("Perhaps the Commission has the power to do so under the last clause of the subsection. We need not decide whether it does or not, however, since we find that it has not sought to exercise that power.") (internal citations omitted). The Second Circuit thus did not find that Section 16(b) unambiguously requires directors to disgorge short-swing profits for transactions entered into before becoming directors and its holding in *Adler* does not prevent a contrary SEC regulation entitled to *Chevron* deference. *See Brand X*, 545 U.S. at 982.

### iii. The Exemption Is Entitled to *Chevron* Deference.

Because "prior precedent does not categorically prohibit" the D/O Exemption, *Hassoun*, 968 F.3d at 200, it is analyzed under the two-step procedure for determining deference to agency statutory interpretations, *see Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). First, the court assesses if the statute is unambiguous using "traditional tools of statutory construction." *Id.* at 842-43 n.9. If the statute is unambiguous, then the court "must give effect to the unambiguously expressed intent of Congress." *Id*. at 843. But "if the statute is silent or ambiguous," then the court asks if the regulation is "a permissible construction of the statute." *Id.*

**Silence and Ambiguity**. Section 16(b)'s text does not reveal an "unambiguously expressed intent of Congress" about whether a director must be liable for transactions predating their directorship. *Id.* at 842-43. Section 16(b) expressly delegates to the SEC the power to exempt transactions from liability, and it is silent on the contours of those exemptions. *See* 15 U.S.C. § 78p(b) ("This subsection shall not be construed to cover . . . any transaction or transactions which

27

the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."). Not only did "Congress explicitly delegate[] to the Commission the policymaking authority to exempt certain transactions," but it "took the further step of admonishing the courts that the statute 'shall not be construed' otherwise." *Bruh v. Bessemer Venture Partners III L.P.*, 464 F.3d 202, 208 (2d Cir. 2006); *see also Huppe v. WPCS Int'l Inc.*, 670 F.3d 214, 220 (2d Cir. 2012) (SEC has "broad exemptive authority under [Section 16(b)] not shared by the courts"). Because "Congress clearly left open a 'gap' in Section 16(b) for the SEC to fill," courts proceed to the second *Chevron* step in evaluating exemptions. *Roth ex rel. Beacon Power Corp. v. Perseus L.L.C.*, 522 F.3d 242, 249 (2d Cir. 2008) (citations omitted). Courts "give *Chevron* deference to the SEC's opinion on whether the transactions exempted" under its rules "are comprehended within the purpose of Section 16(b)." *Id.* The "SEC's views are entitled to 'controlling weight' unless the regulation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* (quoting *Chevron*, 467 U.S. 837, 843-44).[10]

***Reasonableness***. The SEC reasonably determined that the D/O Exemption furthers Section 16(b)'s purpose. The SEC enacted the D/O Exemption because it would be "unnecessarily harsh" to subject directors and officers to strict liability "even though they may not have known at the time of the transactions that they would become officers or directors in the future." SEC, Securities Exchange Act, Release No. 34-27148, 44 SEC Docket 526, § III.A.2. (Sept. 6, 1989); *see also Foremost-McKesson*, 423 U.S. at 252 ("[S]erving the congressional purpose does not require

---

[10] While *Chevron* uses the terms "arbitrary" and "capricious" regarding evaluations of express delegations of authority, courts analyze "initial interpretation[s]" of statutes by applying a "reasonableness" standard to the agency's decisionmaking and rationale under the second step of the *Chevron* analysis rather than a more heightened standard that evaluates whether a rule is procedurally defective because of "flaws in the agency's decisionmaking process." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Env't Prot. Agency*, 846 F.3d 492, 521-25 (2d Cir. 2017) (citations omitted).

28

resolving every ambiguity in favor of liability under § 16(b) . . . [T]he legislative history of § 16(b) indicates that by adding the exemptive provision Congress deliberately expressed a contrary choice."). This determination is reasonable and entitled to deference. *Roth*, 522 F.3d at 249.

## CONCLUSION

For these reasons, the Court should dismiss the Complaints under Rule 12(b)(1) or Rule 12(b)(6).

Dated: November 8, 2023

Respectfully submitted,

WOLLMUTH MAHER & DEUTSCH LLP

*/s/ Joshua M. Slocum*
David H. Wollmuth
Joshua M. Slocum
Maxwell G. Dillan
Yating Wang
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
dwollmuth@wmd-law.com
jslocum@wmd-law.com
mdillan@wmd-law.com
ywang@wmd-law.com

*Attorneys for Defendants RC Ventures LLC and Ryan Cohen*