**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| 20230930-DK-BUTTERFLY-1, INC., f/k/a BED BATH & BEYOND INC., | |
| Plaintiff, | Case No. 1:24-cv-05874-NRB |
| v. | |
| RYAN COHEN and RC VENTURES LLC, | |
| Defendant. | |

**DEFENDANTS RYAN COHEN AND RC VENTURES LLC'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

WOLLMUTH MAHER & DEUTSCH LLP

Joshua M. Slocum
Maxwell G. Dillan
Jocelyn M. Stuto
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
jslocum@wmd-law.com
mdillan@wmd-law.com
jstuto@wmd-law.com

*Attorneys for Defendants Ryan Cohen and RC Ventures LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.  Plaintiff Fails to State a Section 16(b) Claim Against the Cohen Defendants as Directors ............................................................................................................................ 2

   A.  The Cohen Defendants Are Exempt from Director Liability Because the Purchases Predate Their Alleged Directorship. ..................................................... 2

   B.  Plaintiff Does Not Plausibly Allege that the Cohen Defendants Were Directors by Deputization at the Time of the Purchases. ....................................... 4

II. Plaintiff Fails to State a Section 16(b) Claim Against the Cohen Defendants as Beneficial Owners .......................................................................................................... 6

   A.  Plaintiff Bears the Burden of Establishing that the Cohen Defendants Were Beneficial Owners at the Time of Their Purchases. ............................................... 6

   B.  The Cohen Defendants Did Not Beneficially Own More Than 10% of BBBY's Shares at the Time of the Purchases. ........................................................ 8

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Avalon Holdings Corp. v. Gentile*,
   597 F. Supp. 3d 640 (S.D.N.Y. 2022) .................................................................................. 7

*Bayway Refining Co. v. Oxygenated Marketing and Trading A.G.*,
   215 F.3d 219 (2d Cir. 2000) ................................................................................................. 3

*Bruh v. Bessemer Venture Partners III L.P.*,
   464 F.3d 202 (2d Cir. 2006) ................................................................................................. 3

*C.R.A. Realty Corp v. Enron Corp.*,
   842 F. Supp. 88 (S.D.N.Y. 1994) .................................................................................. 9, 10

*Gwozdzinsky v. Zell/Chilmark Fund, L.P.*,
   156 F.3d 305 (2d Cir. 1998) ................................................................................................. 3

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir. 1996) ................................................................................................... 6

*Huppe v. WPCS Int'l Inc.*,
   670 F.3d 214 (2d Cir. 2012) ................................................................................................. 3

*In re Bed Bath & Beyond Corp. Sec. Litig.*,
   687 F. Supp. 3d 1 (D.D.C. 2023) ......................................................................................... 5

*In re Luxottica Group S.p.A. Securities Litigation*,
   293 F. Supp. 2d 224 (E.D.N.Y. 2003) .............................................................................. 10

*Loper Bright Enterprises v. Raimondo*,
   144 S. Ct. 2244 (2024) .................................................................................................... 2, 3

*Saks v. Franklin Covey Co.*,
   316 F.3d 337 (2d Cir. 2003) ................................................................................................. 7

*SEC v. Fiore*,
   416 F. Supp. 3d 306 (S.D.N.Y. 2019) .................................................................................. 7

*Sewell v. Bernardin*,
   795 F.3d 337 (2d Cir. 2015) ................................................................................................. 4

*United States v. Johnson*,
   459 F.3d 990 (9th Cir. 2006) ............................................................................................... 7

*United States v. Leon*,
   766 F.2d 77 (2d Cir. 1985).............................................................................................. 2

*Van Aalten v. Hurley*,
   176 F. Supp. 851 (S.D.N.Y. 1959) ................................................................................. 4

**Statutes**

15 U.S.C. § 77k(b) ............................................................................................................. 7

15 U.S.C. § 78p ................................................................................................................. 3

15 U.S.C. § 78p(b) ............................................................................................................ 6

15 U.S.C. § 78w(a)(1) ....................................................................................................... 4

**Regulations**

17 C.F.R. § 240.10b5-1(c) ................................................................................................. 7

17 C.F.R. § 240.13d-1 ....................................................................................................... 6

17 C.F.R. § 240.16a–2(a) .................................................................................................. 2

**Other Authorities**

Romeo & Dye, *Section 16 Treatise and Reporting Guide* (5th ed. 2019) .................................. 5, 8

**PRELIMINARY STATEMENT**

The Court should grant the motion to dismiss because the FAC fails to sufficiently allege a Section 16(b) claim against the Cohen Defendants as statutory directors or beneficial owners.[1] Plaintiff's opposition ("Opp.") fails to show otherwise.

On its director by deputization theory, Plaintiff urges the Court to invalidate decades-old SEC regulations, which clarify that directors are not subject to Section 16(b) for purchases predating their directorship. There is no support for Plaintiff's request to invalidate these regulations. But even if there were, it would not help Plaintiff. Section 23(a) of the Exchange Act expressly prohibits imposing liability on a party relying in good faith on then-existing SEC regulations, even if those regulations are later invalidated. Plaintiff alleges no bad faith in the FAC nor provides any other reason to disregard the protections of Section 23(a) here. That is in addition to Plaintiff's failure to allege facts showing that the Cohen Defendants were directors by deputization in the first place. This theory fails.

On its beneficial owner theory, Plaintiff asks the Court to ignore a long-standing SEC rule concerning when an investor may rely on a company's most-recent share count disclosure to determine their beneficial ownership. Plaintiff highlights general statements by BBBY, but general statements are insufficient for this purpose. That rule is particularly applicable where, as here, BBBY's contemporaneous representations confirmed the accuracy of the Cohen Defendants' determination that they were not beneficial owners. Accordingly, the Cohen Defendants were permitted to rely on BBBY's most recent share count and cannot be liable as beneficial owners.

The Court should reject Plaintiff's attempt to create new law and impose strict liability retroactively on the Cohen Defendants.

---

[1] Capitalized terms have the same meanings as in the Cohen Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Mot."), ECF No. 25.

# ARGUMENT

I. **Plaintiff Fails to State a Section 16(b) Claim Against the Cohen Defendants as Directors.**

Plaintiff's director by deputization theory fails because the New Directors were not appointed to the Board until three weeks *after* the Cohen Defendants' last purchase. Directors (and, by extension, directors by deputization) cannot be liable under Section 16(b) for transactions predating their directorship. Mot. at 12-14. Even were that not so, the FAC fails to allege facts showing that the Cohen Defendants were directors by deputization by virtue of the New Directors' appointment to the Board. Nothing in Plaintiff's opposition cures this deficiency.[2]

   A. **The Cohen Defendants Are Exempt from Director Liability Because the Purchases Predate Their Alleged Directorship.**

Plaintiff concedes that it does not, and cannot, allege that the Cohen Defendants were statutory directors at the time they purchased BBBY shares. Directors are shielded from Section 16(b) liability predicated on transactions that predate their directorships. 17 C.F.R. § 240.16a–2(a). For this reason alone, Plaintiff's deputization theory fails.

Plaintiff argues that the promulgation of Rule 16a-2(a), which exempts transactions where the share purchases occurred before a director joined the board, exceeds the SEC's rulemaking authority following the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*. Opp. at 22-24. But the *Loper* decision provides no grounds to invalidate Rule 16a-2(a), nor would its invalidation subject the Cohen Defendants to any liability because they are protected by Section 23(a).

---

[2] Plaintiff claims the Court need not consider the director by deputization theory if it finds in Plaintiff's favor on the beneficial owner theory. Opp. at 15-16. That is incorrect. As the Second Circuit held in *Leon,* "a court should decide no more than is necessary" when "it can *resolve the case*" on other grounds. *United States v. Leon,* 766 F.2d 77, 78 (2d Cir. 1985) (emphasis added). Allowing Plaintiff's beneficial ownership theory to proceed certainly does not "resolve the case."

2

### 1. Rule 16a-2(a) is Valid and Enforceable.

The promulgation of Rule 16a-2(a) was well within the discretion afforded to the SEC by Congress under the *Loper* framework and is therefore valid and enforceable.[3] Under *Loper*, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). Courts analyzing the discretion afforded to the SEC by Congress under Section 16(b) have held that Congress not only "explicitly delegated to the Commission the policymaking authority to exempt certain transactions," but "took the further step of admonishing the courts that the statute 'shall not be construed' otherwise." *Bruh v. Bessemer Venture Partners III L.P.*, 464 F.3d 202, 208 (2d Cir. 2006); *see also Huppe v. WPCS Int'l Inc.*, 670 F.3d 214, 220 (2d Cir. 2012) (the SEC has "broad exemptive authority under the [Section 16(b)] not shared by the Courts.").

Rule 16a-2(a) is also consistent with the policy purpose of Section 16(b). "Section 16(b) of the Exchange Act seeks to deter 'insiders,' who are presumed to possess material information about the issuer, from using such information as a basis for purchasing or selling the issuer's equity securities at an advantage over persons with whom they trade." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998) (citing 15 U.S.C. § 78p). It would be manifestly unfair, and inconsistent with Congress's intent, to impose Section 16(b) liability on a shareholder who, at the time of its purchase, was not a statutory insider, had no special relationship with the issuer, and no access to insider information that could be exploited to inform the shareholder's

---

[3] Plaintiff's suggestion that Cohen Defendants cannot address its argument on Rule 16a-2(a)'s validity because it was not raised in the opening brief is incorrect. "[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." *Bayway Refining Co. v. Oxygenated Marketing and Trading A.G.*, 215 F.3d 219, 226-227 (2d Cir. 2000) (citations omitted). Indeed, Plaintiff's *Loper* argument was also conspicuously absent from its pre-motion letter and was raised for the first time in its Opposition. ECF No. 19.

investment decision. Plaintiff's reliance on *Adler* to show otherwise is misplaced. As Plaintiff admits, *Adler* does not, and could not, analyze whether enacting Rule 16a-2(a) as an exemption to Section 16(b) was a proper exercise of the SEC's discretion because *Adler* was decided before Rule 16a-2(a) was enacted. Opp. at 22.

### 2. The Cohen Defendants Are Exculpated from Liability Under Section 23(a) Even if Rule 16a-2(a) Were Invalidated.

Section 23(a) of the Exchange Act provides that "[n]o provision of [the Exchange Act] imposing any liability shall apply to any act done or omitted in good faith in conformity with a rule . . . of the [SEC] . . . notwithstanding that such rule . . . may thereafter be . . . determined by judicial or other authority to be invalid for any reason." 15 U.S.C. § 78w(a)(1). Section 23(a)'s "purpose is to broadly protect those who understandably rely upon a duly promulgated rule of an administrative agency, notwithstanding that such rule is thereafter invalidated." *Van Aalten v. Hurley*, 176 F. Supp. 851, 855 (S.D.N.Y. 1959). Rule 16a-2(a) remains in full force and effect, just as when the Cohen Defendants purchased BBBY shares, and Plaintiff has alleged no facts evidencing bad faith by the Cohen Defendants in complying with this Rule. Accordingly, even should the Court find Rule 16a-2(a) invalid, such a decision should have no effect on the Cohen Defendants' liability as purported directors by deputization under Section 23(a).[4]

### B. Plaintiff Does Not Plausibly Allege that the Cohen Defendants Were Directors by Deputization at the Time of the Purchases.

Even if the Cohen Defendants were not exempt from liability under Rule 16a-2(a), Plaintiff does not plausibly allege that the Cohen Defendants were directors by deputization. The parties

---

[4] Plaintiff's critiques of the Cohen Defendants' reliance on this rule are misplaced. Nothing in Section 23(a) states that it is an affirmative defense, but even if it were, Plaintiff's failure to allege facts evidencing bad faith warrants dismissal. *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) ("Dismissal . . . is appropriate when a defendant raises a statutory bar . . . as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.").

agree that five factors are relevant in determining whether directors were deputized. *See* Opp. at 17. Plaintiff, however, alleges only one of those factors—that RCV appointed the New Directors to the Board. Plaintiff's attempts to overcome its pleading deficiencies on the remaining factors fall short. *See* Mot. at 14-17.

None of Plaintiff's arguments that the New Directors were appointed to represent the Cohen Defendants' interests are sufficient to overcome the fact that the FAC does no more than allege "the mere presence on an issuer's board of a person who is associated with an" investor. Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.04[5]. This single alleged factor "is insufficient . . . to establish" that the investor was a director by deputization. *Id.* Far from the "smoking gun" Plaintiff claims, the allegations in the FAC, which are merely reiterated in the opposition, Opp. at 18-19, do little more than show that individuals associated with Mr. Cohen sat on the Board instead of him, which is not alone a hallmark of deputization.

Next, Plaintiff attempts to rely on a D.C. District Court decision to support its allegation that the Cohen Defendants used information obtained from the New Directors to inform their investment decision. *See In re Bed Bath & Beyond Corp. Sec. Litig.*, 687 F. Supp. 3d 1 (D.D.C. 2023). In that case, the court found that the complaint sufficiently alleged that misstatements were made in RCV's SEC filings regarding Mr. Cohen's access to non-public material adverse information. *Id.* at 14. *Nowhere* in that opinion did the court find that the New Directors were the source of that information, or that Mr. Cohen used information obtained from the New Directors to inform his investment decisions. *See id.* The decision consequently does nothing to buttress Plaintiff's deputization theory. Opp. at 19-21.

Because Plaintiff fails to sufficiently plead that the Cohen Defendants were directors by deputization at the time of their purchases, Plaintiff's statutory director theory fails.

5

## II. Plaintiff Fails to State a Section 16(b) Claim Against the Cohen Defendants as Beneficial Owners.

Plaintiff also fails to state a Section 16(b) claim against the Cohen Defendants because RCV was not a 10% beneficial owner at the time of its purchases. Plaintiff does not dispute that an investor is liable under Section 16(b) only if the investor was a beneficial owner both at the time of purchase and sale. *See* 15 U.S.C. § 78p(b); Mot. at 17-18. Rule 13d-1 allows investors to rely on the share count provided "in the issuer's most recent quarterly or annual report" to determine whether they beneficially own more than 10% of a company's shares, unless they know or have reason to know that the share count in the report was inaccurate. 17 C.F.R. § 240.13d-1. It is undisputed that, pursuant to this rule, the Cohen Defendants relied on BBBY's November 27, 2021 quarterly report to determine that RCV was not a beneficial owner when purchasing the BBBY shares in February and March 2022. Nothing raised in the opposition is sufficient to overcome the FAC's lack of well-pled facts that the Cohen Defendants knew or should have known that the share count reflected in that quarterly report was inaccurate.

### A. Plaintiff Bears the Burden of Establishing that the Cohen Defendants Were Beneficial Owners at the Time of Their Purchases.

Plaintiff's suggestion that the burden is on the Cohen Defendants to prove they did not beneficially own more than 10% of BBBY's shares at the time of RCV's purchases is wrong. The text and purpose of Rule 13d-1 show that it is not an affirmative defense and the burden remains on Plaintiff to sufficiently allege that the Cohen Defendants beneficially owned more than 10% of BBBY's shares at the time of the purchases.[5]

---

[5] *Harsco Corp. v. Segui*, 91 F.3d 337, 342 (2d Cir. 1996), on which Plaintiff relies for its assertion that a party seeking the benefit of reasonable reliance has the burden of proving it, simply stands for the general principle that a plaintiff alleging securities fraud has the burden of proving reasonable reliance as an element of its claim.

The language of Rule 13d-1 places no burden of proof on the defendant; it simply defines whether a defendant falls within Section 16(b). When Congress or the SEC wishes to establish a statute or rule as an affirmative defense, they know how to make that clear. *See United States v. Johnson*, 459 F.3d 990, 997 (9th Cir. 2006) ("Congress knows how to create an affirmative defense when it wishes to do so."); *see also, e.g.*, 15 U.S.C. § 77k(b) ("no person, other than the issuer, shall be liable as provided therein who shall sustain the burden of proof . . . ."); 17 C.F.R. § 240.10b5-1(c) (describing "[a]ffirmative defenses"). Rule 13d-1 contains no similar language.

The purpose of Rule 13d-1 is also inconsistent with an affirmative defense. "An affirmative defense is defined as 'a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'" *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (citation omitted). "If an argument can at most negate an element of the plaintiff's claim, it is not appropriately considered an affirmative defense." *Avalon Holdings Corp. v. Gentile*, 597 F. Supp. 3d 640, 650 (S.D.N.Y. 2022) (citation omitted). Here, whether the Cohen Defendants "were more-than 10% beneficial owners" at the time of their purchases "are elements of Plaintiff['s] claim[]." *Id*. Their invocation of Rule 13d-1 is therefore "not an affirmative defense, but simply a partial denial of Plaintiff['s] claim[]." *Id*.[6]

Even if Rule 13d-1 were an affirmative defense, dismissal is still warranted. The facts alleged in the FAC, and documents incorporated therein by reference, demonstrate that (i) the

---

[6] Plaintiff's reliance on *Fiore* is misplaced. In *Fiore*, defendants argued they were not liable for failing to make required Section 13(d) filings because the issuing company incorrectly indicated it was not a Section 12 reporting company. *SEC v. Fiore*, 416 F. Supp. 3d 306, 329 (S.D.N.Y. 2019). The court held that, since scienter is not an element of a Section 13(d) violation, "ignorance is no excuse," but defendants could assert reliance on the company's statement that it was not a reporting company, as a defense. *Id.* at 329-30. This holding is unrelated to Rule 13d-1(j), which allows investors to rely on the issuer's most recent quarterly or annual reports "in determining *the amount of outstanding securities* of a class of equity securities" when calculating beneficial ownership. 17 C.F.R. § 240.13d-1(j) (emphasis added).

Cohen Defendants did not beneficially own more than 10% of BBBY's shares at the time of RCV's purchases according to the most recent public share count disclosures and (ii) other public information did not provide the Cohen Defendants with actual or constructive knowledge that the most recent public share count disclosures were inaccurate. *See supra* § II.B.

### B. The Cohen Defendants Did Not Beneficially Own More Than 10% of BBBY's Shares at the Time of the Purchases.

Plaintiff does not dispute that the Cohen Defendants properly calculated their beneficial ownership as equal to 9.8% according to BBBY's most recent November 27, 2021 quarterly report, as permitted by Rule 13d-1. Plaintiff instead seeks to avoid Rule 13d-1 solely on the ground that the Cohen Defendants supposedly "had reason to believe" the share count disclosed in that quarterly report was inaccurate based on other public announcements regarding BBBY's anticipated share repurchases. Opp. at 11-15. Not so.

Romeo & Dye, which Plaintiff agrees is the leading Section 16(b) treatise, explains that "an issuer's announcement of a stock repurchase program is not enough to charge a person with knowledge of the precise date on which the issuer later repurchases enough of its outstanding shares to push that person over the ten percent threshold." Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.03(3)(j)(iv) n.77 (5th ed. 2019). Contrary to Plaintiff's suggestion, it has alleged *no* facts showing that any representations from BBBY regarding the share repurchase program put the Cohen Defendants on notice of "the precise date" that the repurchases pushed their beneficial ownership over the 10% threshold. *See id.*

Plaintiff also cites no authority to support its proposition that "[r]eliance is destroyed if the Cohen Defendants had *any* reason to believe the reported share count was inaccurate." Opp. at 12 (emphasis in original). Such an interpretation flouts the entire purpose of Rule 13d-1. Almost all companies see a change in their share count after their periodic reports due to equity awards, the

8

exercise of derivative securities, share repurchases, or other issuances and transactions. Plaintiff's interpretation of Rule 13d-1 would render it meaningless and require investors to request a share count from an issuer before any share purchase. This would be "needlessly inefficient" and "inconsistent with the SEC's goal of streamlining and minimizing compliance costs." *C.R.A. Realty Corp. v. Enron Corp*, 842 F. Supp. 88, 91 (S.D.N.Y. 1994).

Plaintiff's attempt to duck the holding of *C.R.A. Realty* is unavailing. Plaintiff tries to distinguish *C.R.A. Realty* on the ground that the C.R.A. defendant "could only guess whether shares might be converted." Opp. at 13. Here, however, the Cohen Defendants faced precisely the same dilemma, as BBBY's vague announcements regarding the potential share repurchases left the Cohen Defendants unable to predict changes in the share count with any reliability. Mot. at 21-23. Plaintiff itself concedes that BBBY's announcements regarding the share repurchase program merely "detailed the timing and amount of *anticipated* repurchases," and gave no definitive details about the actual number of shares repurchased at any point prior to, or at the time of, the Cohen Defendants' final purchase on March 3. *See* Opp. at 12-14.

The other disclosures Plaintiff points to also provided no certainty. For example, Plaintiff claims that, in a January 6, 2022 investor presentation, BBBY announced that it had repurchased $120 million of stock in the third quarter ended November 27, 2021. *Id.* at 14. But some or all of these repurchases would have already been reflected in BBBY's outstanding share count disclosed in the November 27, 2021 filing for the third quarter. Plaintiff also points to BBBY's announcement that the company had spent "$0.1 billion in *capital expenditures and* share repurchase activity" in the quarter-to-date. *Id.* (emphasis added). That disclosure, however, provides no breakdown on how much of that $0.1 billion was spent on share repurchases versus capital expenditures. Given the uncertainty surrounding BBBY's plan and impossibility for any

9

investor to divine whether or when the reported share count would change, the Cohen Defendants cannot be charged with knowledge. Mot. at 21-23; *C.R.A. Realty Corp*, 842 F. Supp. at 91 ("[i]t would be unjust . . . to treat [defendant] as a company insider, subject to disgorgement, at a time when [defendant] was unable to know of the that status and behave accordingly").

*In re Luxottica Group S.p.A. Securities Litigation* is inapposite. The question there was whether and when defendants became beneficial owners of more than 5% of a company's outstanding shares requiring them to file a statement with the SEC under Section 13(d). 293 F. Supp. 2d 224, 234 (E.D.N.Y. 2003). It was undisputed that, on the date of defendants' purchase, the company disclosed an updated share count, which put defendants over the 5% threshold and triggered their reporting requirements under Section 13(d). *Id.* at 235. The court therefore reasoned that defendants knew or should have known of the updated share count and their resulting reporting requirement by the following day under Rule 13d-1. *Id.* By contrast, BBBY filed no updated share count disclosure at any point before the last purchase on March 3, 2022. In fact, the press release attached to BBBY's Form 8-K and the Cooperation Agreement filed *three weeks* later, confirmed that the Cohen Defendants still owned only 9.8% of the outstanding shares. Mot. at 21. Far from being irrelevant, as Plaintiff argues (Opp. at 13), these representations corroborate the Cohen Defendants' reasonable belief that they continued to beneficially own 9.8% of BBBY's outstanding shares at the time of RCV's last purchase, and render Plaintiff's proposed inference otherwise unreasonable.

For these reasons, Plaintiff has not sufficiently alleged that the Cohen Defendants were beneficial owners of more than 10% of BBBY's shares at the time of RCV's final purchases.

## CONCLUSION

In Section 16(b) and its implementing regulations, Congress and the SEC established a clear, predictable framework for investors to plan their stock purchases and sales. This framework

minimizes transaction costs and insulates investors from the threat of unfair surprise when they rely on SEC regulations. Plaintiff asks the Court to overturn that framework, make new law, and hold the Cohen Defendants liable retroactively. It should not. The Court should dismiss the FAC with prejudice under Rule 12(b)(6).

Dated:  February 3, 2025

Respectfully submitted,

WOLLMUTH MAHER & DEUTSCH LLP

*/s/ Joshua M. Slocum*
Joshua M. Slocum
Maxwell G. Dillan
Jocelyn M. Stuto
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
jslocum@wmd-law.com
mdillan@wmd-law.com
jstuto@wmd-law.com

*Attorneys for Defendants Ryan Cohen and RC Ventures LLC*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that Defendants Ryan Cohen and RC Ventures LLC's Reply Memorandum of Law in Support of Their Motion Dismiss contains 3,500 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, and any required certificates. This document was prepared using Microsoft Word, and this is the word count generated by Microsoft Word for this document. This therefore certifies that this document complies with the word-count limit of 3,500 words.

Dated:  New York, New York                    Respectfully submitted,
        February 3, 2025

                                              By: /s/ Joshua M. Slocum
                                              WOLLMUTH MAHER & DEUTSCH LLP