UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

20230930-DK-BUTTERFLY-1, INC.,
f/k/a BED BATH & BEYOND INC.,

                Plaintiff,

  - against –

RYAN COHEN and RC VENTURES LLC,

                Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

24 Civ. 5874 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff is 20230930-DK-Butterfly-1, Inc. ("New BBBY" or "plaintiff"), a corporation previously known as Bed Bath & Beyond, Inc.[1] Defendant Ryan Cohen ("Cohen") is an investor who purchased and sold Bed Bath & Beyond, Inc. ("BBBY") equity securities during the period of time relevant to this action through co-defendant RC Ventures LLC ("RC Ventures") (together, the "Cohen defendants"), a limited liability company of which he was the sole manager. AC ¶¶ 12-13.

    Plaintiff contends that, between March and August 2022, the Cohen defendants realized a short-swing profit totaling at least $47,173,867.96 from transactions involving BBBY common stock, in

---

[1]    Bed Bath & Beyond, Inc. changed its name on September 21, 2023, following its filing of Chapter 11 bankruptcy. ECF No. 17 ("Amended Complaint," or "AC") ¶ 11.

violation of Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). AC ¶¶ 7-8, 175-83. Plaintiff now seeks recovery of this profit under two independent theories of liability. The Cohen defendants have filed a motion to dismiss plaintiff's complaint in its entirety. ECF No. 24 ("Mot."). For the reasons discussed herein, the Cohen defendants' motion is granted in part and denied in part.

**BACKGROUND**

I.   **Factual Background**[2]

    a. **The Cohen Defendants' Initial Investment & Beneficial Ownership**

RC Ventures made its first purchase of BBBY stock on January 13, 2022. AC ¶ 14.[3] By March 3, 2022, RC Ventures had acquired ownership of 9,450,100 BBBY shares. AC ¶ 15. The company publicly disclosed this position on March 7, 2022, filing a Schedule 13D with the U.S. Securities and Exchange Commission (the "SEC") stating its beneficial ownership of 9.8% of BBBY's then-outstanding shares. AC, Ex. A.

---

[2]   The facts herein are drawn from plaintiff's Amended Complaint, AC, and the exhibits attached thereto, which the Court finds incorporated by reference. DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). For the purposes of the Court's ruling on the instant motion, the Court draws all reasonable inferences in plaintiff's favor. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

[3]   At all times relevant to this motion, BBBY's common stock was registered under Section 12(b) of the Exchange Act and listed for trading on the Nasdaq Global Select Market. AC ¶ 11.

-2-

In this Schedule 13D, RC Ventures reported that it had calculated its beneficial ownership percentage based on the assumption that there were "96,337,713 [s]hares outstanding[,]" as reported in "[BBBY]'s Quarterly Report on Form 10-Q filed with the [SEC] on January 6, 2022[,]" which stated the company's outstanding share count as of November 27, 2021.  AC, Ex. A at 6.

However, between November 2021 and March 2022, BBBY had completed a series of share repurchases that significantly reduced the number of BBBY shares outstanding.  AC ¶ 130.  Information about the timing of these share repurchases and their progress was publicly disclosed, including in a press release issued on November 2, 2021, AC ¶¶ 136-139, Ex. H, and an investor presentation published on January 6, 2022, AC ¶ 140.[4]  On April 21, 2022, BBBY filed with the SEC its annual report on Form 10-K disclosing a revised share count of 79,845,789 as of March 26, 2022.  AC ¶ 152.  The Cohen defendants' beneficial ownership percentage amounted to 11.8% of this revised share count.  Id.

---

[4]    The November 2, 2021 press release stated that BBBY expected to repurchase $400 million of BBBY stock between November 2021 and February 2022.  AC ¶¶ 136, 139, Ex. H.  The January 6, 2022 investor presentation disclosed that BBBY had completed a total of $120 million in share repurchases in the third quarter of fiscal year 2021 and expected to complete an additional $275 million in share repurchases in the fourth quarter of fiscal year 2021.  AC ¶ 140.

**b. The Parties' Cooperation Agreement**

In addition to disclosing their beneficial ownership percentage, the Cohen defendants attached to their March 7, 2022 Schedule 13D a copy of a March 6, 2022 letter that Cohen had sent to the BBBY board of directors in which he stated that he "fe[lt] compelled to scrutinize the viability of the Company's extremely ambitious . . . strategy" and offered "suggestions" to "adjust[] [that] strategy[.]"  AC, Ex. A at 10-11.  Cohen also asserted in this letter that he would "hold the Board and management accountable if necessary."  Id. at 13.

Subsequently, on March 25, 2022, BBBY and the Cohen defendants announced that they had entered into a "Cooperation Agreement" pursuant to which BBBY agreed to add three new members to its board as Independent Directors, all of whom were designated by RC Ventures.  AC, Ex. B § 1(a)(i)(B).[5]  The three new board members were Marjorie L. Bowen, Shelly C. Lombard, and Benjamin Rosenzweig (together, the "March appointees").  Id.  In exchange for these appointments, the Cohen defendants agreed not to initiate a proxy contest or own more than 19.9% of BBBY common stock for one year.  AC ¶ 28, Ex. B § 2(a).  The Cohen defendants also acknowledged as

---

[5]    The agreement also obligated BBBY to appoint two of these appointees to a four-member Strategy Committee "to support the Board's oversight and review of a strategic analysis of the buybuy BABY business" and provided that, if one of the appointees resigned or otherwise ceased to serve as a director during the term of the agreement, the Cohen defendants had the right to fill the vacancy with an acceptable replacement.  AC, Ex. B §§ 1(a)(ii), 1(b)(i).

part of this agreement that securities laws in the United States "may prohibit any person who has received from an issuer material, nonpublic information from purchasing or selling securities of such issuer or from communicating such information to any other person . . . likely to purchase or sell such securities." AC, Ex. B § 1(f).

### c. The Cohen Defendants' Subsequent Interactions with the BBBY Board of Directors

In the months that followed, Cohen spoke regularly with the March appointees. Specifically, he spoke with Rosenzweig via telephone on April 15, April 16, May 7, and May 8, 2022, AC ¶¶ 59-60,[6] and he discussed BBBY with Lombard during a Zoom call in May 2022, AC ¶ 61. The March appointees are alleged to have repeatedly urged the board to provide Cohen with more influence and access during this period. AC ¶ 44.[7]

Cohen also routinely communicated with members of the BBBY board and management. He spoke with then-CEO Mark Tritton via

---

[6]   Notably, Rosenzweig admitted during a subsequent deposition that he provided Cohen with nonpublic information during these calls, although he described the conversations as involving "'high-level observation[s]' about BBBY board dynamics." See AC ¶ 60.

[7]   Specifically, Bowen allegedly pressured the board to allow Cohen to sign a nondisclosure agreement so that he could have advance access to material nonpublic information about BBBY, including unreleased earnings reports. AC ¶ 45. Rosenzweig also requested that the board provide Cohen with early access to earnings releases and asked the chairman of the board and then-CEO "whether they would be willing to have a confidential discussion" with Cohen to discuss "the state of the business, solicit [his] feedback, [and] . . . broaden and deepen the relationship with him." AC ¶ 46-48.

telephone following the company's earnings release in April 2022,
AC ¶¶ 83-84, Ex. G,[8] and subsequently shared his "high-level
thoughts" for improving BBBY's business in an April 27, 2022 email
to board chair Harriet Edelman, noting in the email that they
"ha[d] to work together to get [BBBY] turned around" and that he
"look[ed] forward to collaborating with [her] often[.]"  AC ¶¶ 76-
77, Ex. F at 2.

On June 28, 2022, Cohen and Edelman spoke twice via Zoom.  AC
¶¶ 66-69, Ex. E at 1-2.  During the calls, Edelman disclosed
updated earnings data and provided him with notice that Sue Gove
would replace Tritton as CEO.  AC ¶ 66, Ex. E at 1-2.[9]  Cohen
warned during the second call that "[i]f [he] [could]n't get into
position, [he] may sell [his] stock."  AC, Ex. E at 1-2.  BBBY
publicly announced this earnings data and the CEO news the next
day, on June 29, 2022, after which the BBBY stock price declined
by more than 23%.  AC ¶ 63-65.

---

[8]    Cohen initially wrote an April 7, 2022 email to Tritton in which he asked
for a call to "catch up" and have a "big picture discussion" about BBBY.  AC ¶
79.    He stated that he wanted "nothing about the quarter or restricted
information."  Id.  Tritton deferred the call until after BBBY reported its
earnings for fiscal year 2021.  Id. ¶ 83.

[9]    Edelman took notes on this call, which she emailed to the BBBY Board.
See AC, Ex. E.  According to these notes, Cohen asked about various issues
related to the company's cash flow and liquidity, including its revolving credit
line, potential sales of shares, and how it planned to repay or refinance its
senior unsecured notes, as well as inventory management, CEO succession, and
plans to reduce overhead.  AC ¶¶ 71-73.

Cohen subsequently spoke with interim CEO Gove via Zoom on July 15, 2022.  AC ¶ 91.  During this conversation, he requested additional information about the company's liquidity and vendor support but reiterated his desire that he not receive any material non-public information.  AC ¶¶ 91-93.  Less than a week later, Edelman sent an email to Cohen asking if she and Gove could meet with him in Florida.  AC ¶ 97.  Cohen responded that any issues they wished to address could be discussed over the phone or video chat.  AC ¶ 98.  Neither Gove nor Edelman spoke with Cohen following this email exchange.  AC ¶ 99.

### d. The Cohen Defendants' Sale of BBBY Stock & Subsequent Developments

The Cohen defendants sold 5,000,000 of their 9,450,100 shares of BBBY on August 16, 2022, and liquidated their remaining position the next day, on August 17, 2022.  AC ¶ 163, Table 1, Ex. I.  These sales reduced the Cohen defendants' beneficial ownership interest in BBBY to less than 10%, which the Cohen defendants reported on a Statement of Changes in Beneficial Ownership on Form 4 filed with the SEC on August 18, 2022.  AC Ex. I at 2.

In the weeks that followed, the public became aware that, among other things, BBBY's suppliers had limited or stopped deliveries of inventory and that BBBY intended to lay off approximately 20% of its workforce, close stores, and cut capital expenditures.  AC ¶ 108.  BBBY's board was aware of this

information at the time of the Cohen defendants' sales.  AC ¶ 109.
In subsequent deposition testimony, Gove stated that she "had
questions about" whether the March appointees may have "signaled
concerns to [Cohen]" about the company.  AC ¶ 117.

The March appointees remained on the BBBY board following the
Cohen defendants' sales of their shares.  Rosenzweig left the board
on December 20, 2022, and Bowen departed on February 11, 2023.  AC
¶ 100.  Lombard stood for re-election in 2023 and remained a
director until the board was disbanded after BBBY filed for
bankruptcy in September 2023.  AC ¶ 101.

## II.  Procedural History

### a. Prior Litigation

In October 2022, two BBBY shareholders filed cases in this
District against BBBY and the Cohen defendants arising out of the
Cohen defendants' August 2022 sales, contending that the Cohen
defendants qualified as statutory insiders and any short-swing
profits from those sales were subject to recovery under Section
16(b).[10]  See In re Bed Bath & Beyond Inc. Section 16(b) Litig.,
No. 22 Civ. 09327 (DEH) (S.D.N.Y.).  The Cohen defendants moved to

---

[10]    Notably, the BBBY Board rejected the shareholders' pre-suit demands,
contending that the transactions at issue "d[id] not give rise to liability
under Section 16(b)" because RC Ventures "did not become a beneficial owner .
. . for the purposes of Section 16(b) until after making the purchases" and
there was "no basis to conclude that [RC Ventures] could be considered a
director" through deputization.  Mot. at 8 (quoting In re BBBY, 22 Civ. 9327,
ECF No. 66-7 at 1).

dismiss the shareholders' claims.  In re BBBY, No. 22 Civ. 09327, ECF Nos. 64-66.  Following confirmation of BBBY's Chapter 11 bankruptcy plan in September 2023, New BBBY filed a motion to substitute as plaintiff.  Id., ECF Nos. 82-85.  On June 12, 2024, the court dismissed the shareholders' claims as moot in light of the company's bankruptcy and denied plaintiff's motion to substitute.  Id., ECF No. 96 at 11-13.[11]

### b. The Present Action

A little over one month later, on August 1, 2024, New BBBY filed this complaint against the Cohen defendants, seeking to recover more than $47 million in profit that it alleges the Cohen defendants realized in violation of Section 16(b).  See ECF No. 1. Plaintiff contends these profits are subject to recovery under Section 16(b) for two independent reasons, namely: (i) the Cohen defendants beneficially owned more than 10% of BBBY's outstanding common stock during the relevant period, AC ¶ 176; and (ii) the appointment of the March appointees qualified both Cohen and RC Ventures as "statutory directors" of BBBY during the relevant six-month period, id. ¶ 175.

---

[11]    In denying the motion to substitute, the Court noted that it was unable to evaluate the impact of New BBBY's substitution because New BBBY "filed its motion for substitution without attaching any proposed amended complaint" and "decline[d] to state whether it [sought] to alter the facts on which [the] case [was] brought."  Id. at 11.  Accordingly, the court determined that granting substitution was not "necessary to avoid injustice[,]" noting that "nothing would preclude [New] BBBY from filing its own . . . timely Section 16(b) action." Id. at 13.

On October 4, 2024, the Cohen defendants filed a letter requesting a pre-motion conference to discuss a proposed motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). See ECF No. 14. Plaintiff filed a letter opposing this motion on the same day. See ECF No. 15. On October 25, 2024, the Court issued an order granting the Cohen defendants' request to file a motion to dismiss without the necessity of a pre-motion conference. See ECF No. 16. Plaintiff filed an amended complaint on November 8, 2024. See AC.

On December 9, 2024, the Cohen defendants filed their motion to dismiss, see Mot., as well as an accompanying memorandum of law, ECF No. 25, and declaration, see ECF No. 26. Plaintiff filed its opposition, ECF No. 28 ("Opp."), and an accompanying declaration, ECF No. 29, on January 13, 2025, and the Cohen defendants filed their reply on February 3, 2025, ECF No. 31 ("Reply").

## LEGAL STANDARDS

### I.    Fed. R. Civ. P. 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), a non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim

-10-

has facial plausibility when the [pleaded] fact[s] . . . allow[] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." <u>Id.</u>

A court must "accept[] as true all factual allegations in the complaint and draw[] all reasonable inferences in plaintiff's favor[.]" <u>Acticon AG v. China N.E. Petrol. Holdings Ltd.</u>, 692 F.3d 34, 37 (2d Cir. 2012). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[.]" <u>Brown v. Daikin Am., Inc.</u>, 756 F.3d 219, 225 (2d Cir. 2014) (quoting <u>Iqbal</u>, 556 U.S. at 678).

In ruling on a 12(b)(6) motion to dismiss, a court may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, [and] documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." <u>Brass v. Am. Film. Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993). Further, courts may take judicial notice of "the contents of relevant public disclosure documents required to be filed with the SEC as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991) (quoting Fed. R. Evid. 201(b)(2)).

## II.  Section 16(b)

Section 16(b) of the Exchange Act "is an insider-trading statute that requires statutorily defined corporate insiders to disgorge short-swing profits obtained by trading in the securities of the corporation."  Rubenstein v. Cosmos Holdings, Inc., No. 19 Civ. 6976 (KPF), 2020 WL 3893347, at *3 (S.D.N.Y. July 10, 2020) (citing Olagues v. Perceptive Advisors LLC, 902 F.3d 121, 125 (2d Cir. 2018)).  It provides in relevant part:

> For the purpose of preventing the unfair use of information which may have been obtained by [a] beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale . . . of any equity security of such issuer . . . within any period of less than six months . . . shall inure to . . . the issuer.

15 U.S.C. § 78p(b).  As used in Section 16(b), the term "beneficial owner" refers to "[e]very person who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security[.]"  15 U.S.C. § 78p(a).[12]

---

[12] For purposes of determining Section 16(b) liability, "the term 'beneficial owner' shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the [Exchange] Act and the rules thereunder."  17 C.F.R. § 240.16a-1(a).  Rule 13-d defines the beneficial owner of a security as:

> [A]ny person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares:
> (1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or
> (2) Investment power which includes the power to dispose, or to direct the disposition of such security.

17 C.F.R. § 240.13d-3(a).

The purpose of Section 16(b) is to "deter 'insiders,' who are presumed to possess material non-public information about the issuer, from using such information to purchase or sell the issuer's equity securities at an advantage over persons with whom they trade." Steel Partners II, L.P. v. Bell Indus., Inc., 315 F.3d 120, 123 (2d Cir. 2002) (citing Gwozdzinsky v. Zell/Chilmark Fund, 156 F.3d 305, 308 (2d Cir. 1998)). Section 16(b) is a strict liability provision, "operat[ing] mechanically, with no required showing of intent to profit from the use of inside information." Gibbons v. Malone, 703 F.3d 595, 599 (2d Cir. 2013) (internal quotation marks and citation omitted); see also Gollust v. Mendell, 501 U.S. 115, 122 (1991) (expressing "reluctan[ce] to exceed a literal, 'mechanical' application of the statutory text in determining who may be subject to liability") (quotation omitted). Accordingly, plaintiffs need only plausibly allege: "(1) a purchase and (2) a sale of securities (3) by an insider (4) within a six-month period." Chechele v. Sperling, 758 F.3d 463, 467 (2d Cir. 2014) (internal quotation marks and citation omitted).

Where a defendant is found to have violated Section 16(b), the remedy is "disgorgement to the company of any profit derived from the matching purchase and any sale of an 'equity security'" within a six-month period. Gwordzinsky v. Zell/Chilmark Fund, L.P., 156 F.3d 305, 308 (2d Cir. 1998).

## DISCUSSION

Plaintiff alleges that the Cohen defendants' profits are subject to recapture under Section 16(b) under two independent theories of liability, contending that the Cohen directors qualified as statutory insiders due to: (i) their beneficial ownership of more than 10% of BBBY's outstanding shares during the six-month period in question, AC ¶¶ 126-62; and (ii) the presence of the March appointees on the BBBY board, which resulted in the Cohen defendants serving as "directors by deputization" during the same period.  AC ¶¶ 38-125.

The Cohen defendants seek dismissal of plaintiff's Section 16(b) claims in full, contending that the Cohen defendants were neither beneficial owners nor directors by deputization at the time of the relevant transactions.  Mot. at 11-25.  We address each argument in turn.

## I.  The Cohen Defendants' Beneficial Ownership

First, the Cohen defendants contend that plaintiff has failed to state a Section 16(b) claim based on beneficial ownership because it has not shown that the Cohen defendants had actual or constructive knowledge that they beneficially owned more than 10% of BBBY's outstanding shares at the time of the relevant purchases in March 2022. Mot. at 17-24. Rather, the Cohen defendants claim, they appropriately calculated their beneficial ownership

percentage as 9.8% using the share count reported by BBBY as of November 27, 2021, which was the most recent share count disclosure available to the public as of RC Ventures' final share purchases on March 3, 2022.  Id.

As noted supra at n.12, "beneficial ownership" for purposes of Section 16(b) liability is defined in Section 13 of the Exchange Act and the regulations promulgated thereunder.  17 C.F.R. § 240.16-1(a).  Rule 13d-1 provides that, for the purpose of Section 13(d) of the Exchange Act:

> [A]ny person, in determining the amount of outstanding securities of a class of equity securities, may rely upon information set forth in the issuer's most recent quarterly or annual report . . . filed with the [SEC] pursuant to this Act, unless such person knows or has reason to believe that the information contained therein is inaccurate.

17 C.F.R. § 240.13d-1(j) (emphasis added).  Similarly, SEC guidance states that an investor becomes a "beneficial owner" "within ten days after information in the company's most recent quarterly, annual or current report indicates the amount of securities outstanding following the buy-back" brought them above the 10% threshold, unless the investor "ha[s] advance awareness of the buyback and/or its consequences."  SEC Div. of Corp. Fin., Compliance and Discl. Interp., Exchange Act Section 16 and Related Rules and Forms, Interp. 209.02 (May 23, 2007).

Plaintiff contends that the Cohen defendants had ample reason to believe that they could no longer rely on the share count contained in BBBY's periodic reporting, asserting that BBBY's November 2, 2021 press release clearly placed the Cohen defendants on notice that BBBY expected to repurchase $400 million in BBBY stock between November 2021 and February 2022, AC ¶¶ 138-39, Ex. H, and BBBY's January 6, 2022 investor presentation confirmed that the company had completed a total of $120 million in share repurchases in the third quarter of fiscal year 2021 and expected to repurchase an additional $275 million worth of stock in the fourth quarter of the same fiscal year, id. ¶ 140. Moreover, plaintiff points to contemporaneous evidence demonstrating that the Cohen defendants were aware of these repurchases, as Cohen mentioned the buybacks in his March 6, 2022 letter to the BBBY board. AC ¶ 149, Ex. A at 11.

Although the Cohen defendants argue that "[p]laintiff seeks to impose constructive knowledge . . . based solely on BBBY's announcement of its accelerated share repurchase program and heavily caveated expectations about when it might be completed[,]" Mot. at 21-22 (citing Romeo & Dye, Section 16 Treatise and Reporting Guide § 2.03(3)(j)(iv) n. 77 ("[A]n issuer's announcement of a stock repurchase program is not enough to charge a person with knowledge of the precise date on which the issuer

-16-

later repurchases enough of its outstanding shares to push that person over the ten percent threshold")), BBBY did far more than announce its share repurchase program. Indeed, BBBY kept the public and its investors apprised as to the progress of the program, issuing its November 2, 2021 press release to inform investors that it expected to repurchase approximately $400 million in shares by the end of fiscal year 2021, AC ¶¶ 138-39, Ex. H at 1, and reporting in its January 6, 2022 investor presentation its intent to repurchase $275 million in shares in the remaining quarter of fiscal year 2021, which ended on February 26, 2022, AC ¶ 140.[13] It strains credulity to accept the argument that the Cohen defendants, who purchased more than 5 million BBBY shares in less than two weeks, would have failed to review BBBY's recent press releases or investor presentations before investing so heavily in the company.

In response to the Cohen defendants' argument that mere knowledge of BBBY's intended expenditure on buyback was insufficient to enable them to calculate the actual number of outstanding shares, plaintiff contends that, even if BBBY had repurchased $400 million worth of shares at the stock's peak price

---

[13] BBBY stated that fiscal year 2021 ended on February 26, 2022 on its Form 10-K filed on April 13, 2022. See Bed Bath & Beyond, Inc., Report on Form 10-K (Apr. 13, 2022), https://content.edgar-online.com/ExternalLink/EDGAR/0000886158-21-0000015.html?hash=5eabccdbd6d0ef9e55933f5a66ad70f5a66ad70f88a72c52936d2f98db464ef7fb5060149&dest=bbby2020_htm#bbby2020_htm.

during this period of $25.72, BBBY would have reduced its share count by 15,552,099 shares.  AC ¶¶ 143-44.[14]  This would have resulted in, at most, 85.6 million shares outstanding as of March 3, 2021, of which the Cohen defendants would have beneficially owned more than 11%.  AC ¶¶ 146-47.

Further, although the Cohen defendants rely heavily on C.R.A. Realty Corp. v. Enron Corp., 842 F. Supp. 88 (S.D.N.Y. 1994) to support their position that they were permitted to rely solely on BBBY's periodic reporting in calculating their beneficial ownership percentage, that case is inapposite.  The court in that proceeding granted summary judgment for the defendant after it determined that, based on "then-available public information[,]" the defendant "had no way of knowing its ten percent status at [the] time" it acquired that status.  Id. at 91-92.  Here, we address only the Cohen defendants' motion to dismiss the Amended Complaint for failure to state a claim.  Further, based on BBBY's SEC filings and plaintiff's allegations, there appears to have been ample publicly available information that would have

---

[14]    We note that plaintiffs calculated this amount using the $400 million number reported in BBBY's November 2, 2021 press release.  However, the January 6, 2022 investor presentation stated that BBBY had repurchased $120 million in shares and expected to repurchase an additional $275 million before the end of fiscal year 2021, for a total of $395 million in share repurchases during the relevant period.  AC ¶ 140.  Even if BBBY had only repurchased $395 million in shares, it would have reduced its share count by 15,357,698 shares.  This, too, would have resulted in the Cohen defendants having beneficial ownership of more than 11% of BBBY's outstanding shares at the time of its March purchases.

indicated to the Cohen defendants that they had crossed the ten percent ownership threshold in March 2022. See AC ¶¶ 136-148; see also In re Luxottica Group S.p.A. Sec. Lit., 293 F. Supp. 2d 224, 235 (E.D.N.Y. 2003) (declining to dismiss claim under Section 10(b) where defendant failed to file Schedule 13D but had reason to believe the company's reported share count was inaccurate because the board "authorized a repurchase of 15.5 million shares and . . . the company had, in fact, started to make those purchases").

Accordingly, we decline to grant the Cohen defendants' motion to dismiss plaintiff's Section 16(b) claim under a beneficial ownership theory of liability at this stage of the litigation.[15]

## II. The Cohen Defendants as Directors by Deputization

Next, we address plaintiff's claim that the Cohen defendants' profits are also subject to recapture under Section 16(b) because they qualified as directors of BBBY by deputization following the

---

[15]    The Cohen defendants also argue that it is "nonsensical" for plaintiff to argue that the Cohen defendants should have known that their beneficial ownership percentage exceeded 10% because BBBY "confirmed . . . that [RC Ventures] still beneficially owned only 9.8% of its outstanding shares" in its SEC filings on March 24 and 25, 2022. Mot. at 23. However, these filings occurred approximately three weeks after the Cohen defendants filed their Schedule 13D and thus have no impact on how they calculated the ownership percentage they reported at the time of that filing.

Additionally, the Cohen defendants contend that dismissal is appropriate because they reasonably relied on BBBY's public filings. This argument is advanced prematurely, as the issue of reasonable reliance is "a mixed question of fact and law that cannot be resolved solely from the facts alleged in the [AC]." Securities and Exchange Commission v. Fiore, 416 F. Supp. 3d 306, 331 (S.D.N.Y. 2019).

appointment of the March appointees to the BBBY Board on March 25, 2022.[16]  AC ¶¶ 38-125.

The Cohen defendants contend that this theory of liability would impermissibly require the Court to hold that the Cohen defendants qualified as "insiders" at the time of their BBBY purchases, which occurred before the March appointees joined the BBBY board, and, accordingly, before they are alleged to have become directors by deputization.  Mot at 12-14.  It will be recalled that the Cohen defendants' last purchases of BBBY shares occurred on March 1, 2, and 3, 2022, and the March appointees joined the BBBY board approximately three weeks later, on March 24, 2022.  AC ¶¶ 32, 163, Table 1.

In advancing this argument, the Cohen defendants rely on Rule 16a-2(a), which provides that directors generally cannot be held liable under Section 16(b) for transactions that occurred before they became directors.  See Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC, 298 F.3d 136, 141 & n.3 (2d Cir. 2002) ("Section 16(b) liability does not extend to individuals who were neither directors nor other insiders of the issuer when they

---

[16]    Plaintiff contends that the Court need not reach this argument if it determines that the AC plausibly alleges that the Cohen defendants beneficially owned more than 10% of BBBY's common stock during the relevant period.  Opp. at 15.  However, given our holding, we believe it is appropriate to address the argument at this stage of the litigation.

acquired their issuer equity securities.").[17]  Applying this rule, the Cohen defendants assert that they cannot be held liable under Section 16(b) for any purchases made before the March appointees joined the BBBY board.

Plaintiff, however, asserts that Rule 16a-2(a) is no longer valid, contending that the agency's adoption of the rule "exceed[ed] the SEC's exemptive authority" because it was adopted in contravention of the Second Circuit's interpretation of the statutory text in Adler v. Klawans, 267 F. 2d 840 (2d Cir. 1959). Opp. at 21-24.[18]  Accordingly, plaintiff asserts that the SEC's adoption of the rule was a "usurpation of the judicial power" that has since been prohibited by the Supreme Court's recent decision in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024).  Id.

---

[17]    There is one exception to this rule.  Rule 16a-2(a) provides that a director or officer may be held liable for transactions preceding its assumption of its position "if the transaction(s) occurred within six months of the transaction giving rise to the Form 4 filing obligation and the director or officer became subject to section 16 of the Act solely as a result of the issuer registering a class of equity securities pursuant to Section 12 of the Act." Gryl, 298 F.3d 136, 141 n.3 (citing 17 C.F.R. 240.16a-2(a)).  Neither party contends that this exception is applicable here.

[18]    Specifically, plaintiff asserts that the SEC adopted Rule 16a-2(a) in 1991 in contravention of a 1959 decision in which the Second Circuit held that an individual could be held liable under Section 16(b) when he was not a director at the time of the relevant purchase transaction but was a director at the time of the matching sale transaction.  See Adler, 267 F.2d at 847.  The Second Circuit noted that Section 16(b) explicitly states that it "shall not be construed to cover any transaction where [a] beneficial owner was not such both at the time of the purchase and sale[.]"  Adler, 267 F.3d at 845 (citing 15 U.S.C. § 78p(b)).  Accordingly, the Circuit wrote, the canon of expressio unius dictated that this portion of Section 16(b) applied only to beneficial owners, not directors or officers.  Adler, 267 F.3d at 845.

We reject plaintiff's attempt to retroactively apply the Supreme Court's decision in <u>Loper</u> to undermine the Cohen defendants' reliance on what has been the rule of law for more than thirty years. <u>See</u> Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 34-28869, 56 Fed. Reg. 7242, 7244 (Feb. 21, 1991). The events at issue in this action occurred in 2022, nearly two years before the Supreme Court issued its decision in <u>Loper</u>. It would be unwarranted to hold that the Cohen defendants could not have relied on a rule of this vintage because less than one year ago the Supreme Court raised a question about a general principle which has yet to be applied to challenge that rule.[19]

In sum, because plaintiff fails to point to any purchases that occurred after the March appointees joined the BBBY board on March 24, 2022, the Cohen defendants could not have qualified as

---

[19]    Indeed, a review of the existing case law suggests that no federal court has ruled on a challenge to Rule 16a-2 since the Supreme Court decision in <u>Loper</u>.

Further, the Supreme Court explicitly stated that it did not intend for its decision in <u>Loper</u> to "call into question prior cases that relied on the <u>Chevron</u> framework[,]" writing that "[t]he holdings of those cases that specific agency actions are lawful . . . are still subject to statutory <u>stare decisis</u> despite our change in interpretive methodology." 603 U.S. at 412 (overruling <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984)). Plaintiff correctly states that no prior cases applied <u>Chevron</u> to Rule 16a-2(a). Opp. at 23. However, the absence of a <u>Chevron</u> decision does not undermine the Cohen defendants' reliance on that rule. Rather, the fact that no party has challenged Rule 16a-2(a) in the more than thirty years since its introduction provides further support for the reasonableness of that reliance.

directors by deputization at the time of the relevant purchases under Rule 16a-2(a), and any resulting profits from the matched transactions are not subject to recapture under Section 16(b) under this theory of liability.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted in part and denied in part. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 24.

**SO ORDERED.**

Dated:     April 18, 2025
           New York, New York

_____
    NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-23-