**WOLLMUTH MAHER & DEUTSCH LLP**
500 FIFTH AVENUE
NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

September 14, 2026

**VIA ECF**
Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *20230930-DK-Butterfly-1, Inc. v. Cohen et al.*, Case No. 1:24-cv-05874-NRB

Dear Judge Buchwald:

Defendants Ryan Cohen and RC Ventures LLC (the "Cohen Defendants") submit this letter pursuant to the Amended Case Management Plan and Scheduling Order, ECF No. 47, to request a pre-motion conference on a motion for summary judgment.

Plaintiff, the corporate successor of Bed Bath & Beyond Inc. ("BBBY") following its Chapter 11 bankruptcy, alleges the Cohen Defendants are liable for short-swing profits under Section 16(b) of the Exchange Act of 1934 (the "Act"), for trading BBBY shares within a six-month period. The case was significantly narrowed by the Court's Memorandum and Order of April 18, 2025, which dismissed Plaintiff's theory that the Cohen Defendants are subject to Section 16(b) liability because they were "directors by deputization" when they purchased and sold BBBY shares. ECF No. 32 at 19-23. Plaintiff's remaining theory is that the Cohen Defendants are subject to Section 16(b) liability because they were "beneficial owners" of more than 10% of BBBY shares at the time of these purchases and sales. While the Court found the allegations were enough to survive a motion to dismiss on this theory, summary judgment should be entered because the undisputed factual record confirms the Cohen Defendants had "no way of knowing [their] ten percent status" prior to BBBY's public disclosure of an updated share count on April 13, 2022, after the Cohen Defendants ceased buying BBBY stock. *See C.R.A. Realty Corp. v. Enron Corp.*, 842 F. Supp. 88, 91 (S.D.N.Y. 1994) (granting summary judgment in Section 16(b) case).

## Background

The operative facts are undisputed and can be summarized succinctly. On November 2, 2021, BBBY announced its plan to repurchase $400 million of stock over the third and fourth quarters of its 2021 fiscal year. When BBBY filed its third quarter report on January 6, 2022, it disclosed it had repurchased $120 million resulting in an outstanding share count of 96,337,713 as of November 27, 2021 (the end of its third quarter). With that filing, BBBY announced that it anticipated repurchasing another $275 million of shares in the fourth quarter, which ended in

February 2022, subject to change based on a variety of factors, but did not disclose how many shares, if any, had been purchased between November 2021 and the date of the report. The Cohen Defendants purchased BBBY stock from January 13, 2022 to March 3, 2022. BBBY disclosed neither publicly nor directly to the Cohen Defendants any other information about its repurchase program between January 6, 2022, before the Cohen Defendants started making purchases, and April 13, 2022, after the Cohen Defendants stopped buying BBBY stock. The Cohen Defendants relied on BBBY's share count disclosure from the January 6, 2022 filing (which was as of November 27, 2021) in calculating their beneficial ownership of 9.8%. ECF No. 38 ¶ 128.[1]

**Argument**

Section 16(b) itself "does not define the term 'more than 10% beneficial owner.'" *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001). Instead, Rule 16a-1 promulgated thereunder provides that:

> [F]or the purposes of determining whether a person is a beneficial owner of more than 10% of any class of equity securities . . . the term 'beneficial owner' shall mean any person who is deemed a beneficial owner pursuant to Section 13(d) of the Act and the rules promulgated thereunder.

*Id.* (quoting 17 C.F.R. § 240.16a–1(a)(1)); *Lowinger v. Morgan Stanley & Co.*, 841 F.3d 122, 129-30 (2d Cir. 2016). Rule 13d-1, in turn, provides that for the purpose of Section 13(d) of the Act:

> [A]ny person, in determining the amount of outstanding securities of a class of equity securities, may rely upon information set forth in the issuer's most recent quarterly or annual report ... filed with the [SEC] pursuant to this Act, unless such person knows or has reason to believe that the information contained therein is inaccurate.

17 C.F.R. § 240.13d-1(j).

Plaintiff alleges the Cohen Defendants had "reason to believe" the November 27, 2021 share count was inaccurate because BBBY had publicly announced the repurchase program. Standing alone, that announcement is insufficient as a matter of law. This is based on (1) the case law, (2) the leading treatise on Section 16(b), and (3) the SEC's interpretive guidance.

1. The case law confirms summary judgment should be entered where, as here, the investor had "no way of knowing [their] ten percent status" during the at-issue transactions. *C.R.A. Realty*, 842 F. Supp. at 91. That is true even when the *potential* for transactions affecting the issuer's share count is public knowledge. Thus, in *C.R.A. Realty*, the Court rejected plaintiff's argument that a holder of convertible stock "was aware of the conversion feature and therefore should have known" the issuer's last-disclosed share counts were "inaccurate." *Id.* In granting summary judgment, the Court noted defendant could not know when *actual* conversion transactions by other investors

[1] Indeed, it was not just the Cohen Defendants who relied on the November 27, 2021 share count—large investors like Morgan Stanley, BlackRock, and D.E. Shaw each filed Schedule 13Gs in February 2022 after BBBY's announcements wherein they too relied on the November 27, 2021 share count to calculate their beneficial ownership. No public disclosures by any investor during this period used a more up-to-date share count (because none was available).

occurred so the only way for defendant to "determine accurately the number of shares in the class was to pick up the telephone and ask" the issuer—a burden the Court declined to impose. *Id*. The record here is even stronger because, as a matter of policy, BBBY considered nonpublic information about its outstanding shares to be MNPI and ***would not disclose such information to individual investors***. Plaintiff's 30(b)(6) witness confirmed this at her deposition. There was, accordingly, no way for the Cohen Defendants to know whether or when they crossed the ten percent threshold. We anticipate Plaintiff will rely on *In re Luxottica Group S.p.A. Sec. Lit.*, 293 F. Supp. 2d 224 (2003), to argue that BBBY's announcement of its repurchase program was sufficient to trigger Section 16(b) liability. But *Luxottica* was a Section 10(b) case, not a Section 16(b) case, and did not even rule on the argument Plaintiff advances here. Rather, it dismissed the 10(b) claim on other grounds, which means its brief discussion of the issue was dicta.

2. The leading treatise on Section 16(b) is Romeo & Dye, *Section 16 Treatise and Reporting Guide.* It states, "[p]resumably, an issuer's announcement of a stock repurchase program is not enough to charge a person with knowledge of the precise date on which the issuer later repurchases enough of its outstanding shares to push that person over the ten percent threshold." *See* § 2.03(3)(j)(iv) n.80. On this issue, Romeo & Dye cites *C.R.A. Realty* and the SEC guidance discussed immediately below. It cites no contrary authority, and we are aware of none.

3. The SEC's interpretive guidance on Rule 16a-1 provides that:

> Following a company's buy-back of its stock, a person who previously owned less than 10 percent of the company's stock may own more than 10 percent of the stock without having purchased additional shares. If, before the buy-back, the person is aware that the buy-back will occur and will have this result on his or her holdings, the person should file a Form 3 within 10 days after the buy-back. If the person does not have advance awareness of the buy-back and/or its consequences, he or she would need to determine whether he or she is a more than 10 percent beneficial owner and satisfy any obligation to file a Form 3 within ten days after information in the company's most recent quarterly, annual or current report indicates the amount of securities outstanding following the buy-back.

SEC Division of Corporation Finance, Compliance and Disclosure Interpretations, Exchange Act Section 16 and Related Rules and Forms, Interp. 209.02 (May 23, 2007). The SEC's guidance makes clear that an investor does not become a beneficial owner under Rule 16a-1 merely from the announcement of a repurchase program, but instead from a specific buy-back transaction from which the investor could file a Form 3 within 10 days. According to the SEC, the investor must know about the actual transaction ***and*** whether it will push the investor over the ten percent threshold before Section 16 applies. Otherwise, the investor must wait for the next public disclosure to determine its beneficial ownership, and Section 16(b) does not apply in the interim.

Section 16 and its implementing regulations were enacted to give investors certainty and predictability alongside the strict liability regime of Section 16(b). Plaintiff attempts to stretch Section 16(b) beyond its scope and impose liability in circumstances where no court has ever imposed it before, creating uncertainty for investors. It should be rejected. The Cohen Defendants respectfully seek the Court's leave to file a motion for summary judgment.

Respectfully submitted,

*/s/ Joshua M. Slocum*

Joshua M. Slocum
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

*Counsel for Ryan Cohen and RC Ventures LLC*

cc: Counsel of Record (via ECF)