JAMES A HUNTER
ATTORNEY AT LAW

201 KING OF PRUSSIA ROAD, SUITE 650
RADNOR, PENNSYLVANIA 19087

TELEPHONE (484) 275-2162
FACSIMILE (646) 462-3356

September 14, 2026

***BY ECF***

The Honorable Naomi Reice Buchwald
The United States District Court, S.D.N.Y.
500 Pearl Street
New York, New York 10007-1312

**Re: *20230930-DK-Butterfly-1, Inc. v. Cohen et al.*, No. 24-cv-5874 (NRB)**

Dear Judge Buchwald:

Plaintiff 20230930-DK-Butterfly-1, Inc., f/k/a Bed Bath & Beyond Inc. ("BBBY"), respectfully requests a conference preliminary to a motion for summary judgment under Rule 56. The record leaves no genuine dispute of material fact as to any element of BBBY's claim or any affirmative defense, and BBBY is entitled to judgment as a matter of law.

**I. No Genuine Dispute of Material Fact Remains on Any Element of the Claim**

The complaint raises a claim under Section 16(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78p(b). BBBY must prove (1) a purchase and (2) sale of its equity securities (3) within a period of less than six months (4) by a director, officer, or beneficial owner of more than 10% of BBBY's common stock. *See, e.g.*, *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998). Drawing all reasonable inferences in the nonmovant's favor, the Court should grant summary judgment if there is no genuine dispute as to any material fact and BBBY is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Nick's Garage, Inc. v. Progressive Cas. Ins.*, 875 F.3d 107, 113 (2d Cir. 2017).

The record establishes the following material facts beyond genuine dispute:

- Defendants Ryan Cohen and RC Ventures LLC (collectively, the "Cohen Defendants") became beneficial owners of more than 10% of BBBY's common stock on March 1, 2022. At that time, they beneficially owned more than 8.3 million shares when BBBY had fewer than 82 million shares outstanding.

- The Cohen Defendants remained above the 10% threshold continuously through August 16, 2022.

- While beneficially owning more than 10% of BBBY's common stock, the Cohen Defendants purchased BBBY equity securities on March 1, 2, and 3, and sold BBBY equity securities on August 16 at a demonstrable profit.

BBBY will establish these facts from the Cohen Defendants' regulatory filings, their trading records, and BBBY's own authenticated books and records. There is no genuine dispute as to the authenticity of these documents or the accuracy of their material contents. The facts they disclose supply all elements of the claim.

## II. The Cohen Defendants Cannot Establish an Affirmative Defense

The Cohen Defendants have pleaded four affirmative defenses, two of which remain unresolved.[1] One alleges that BBBY's claim is barred by Rule 13d-1 because the Cohen Defendants calculated their beneficial ownership at less than 10% in reasonable reliance on a share count "contained in BBBY's most recent quarterly or annual report." Dkt. 40 at 26. The other alleges that BBBY's claim is barred under Section 23(a) of the Act because "the Cohen Defendants acted in good faith in conformity with the rules and regulations of the Securities and Exchange Commission." *Id.* Because Section 23(a) exculpates conduct only "in conformity with a rule, regulation, or order of the Commission," 15 U.S.C. § 78w(a)(1), the two defenses converge on compliance with Rule 13d-1. *See, e.g.*, *Van Aalten v. Hurley*, 176 F. Supp. 851, 856 (S.D.N.Y. 1959) ("To bring themselves within the sheltering provision of § 23(a), the defendants must establish that they acted in good faith in conformity with a Rule of the Commission."). To avoid summary judgment, the Cohen Defendants must identify a triable question that they conformed to Rule 13d-1 in relying on BBBY's last published share count.

The Cohen Defendants cannot do this as a matter of law. Rule 13d-1(j) allows a person to rely on a share count in a quarterly report only if the person has no "reason to believe that the information contained therein is inaccurate." 17 C.F.R. § 240.13d-1(j). The following material facts leave no genuine dispute that the Cohen Defendants had "reason to believe" the November 2021 share count was stale when they relied on it in March 2022:

- On November 2, 2021, BBBY announced the acceleration of a previously disclosed stock repurchase program. The announcement made clear that BBBY expected to repurchase $400 million worth of stock by February 26, 2022.

- BBBY confirmed on January 6, 2022, that $120 million of repurchases had been made in the quarter ended November 27, 2021, and that another $275 million would be made in the fourth quarter ending February 26. The same disclosure revealed that BBBY had already spent $100 million on "capital expenditures and share repurchase activity" in the weeks between November 27 and December 25.

- Attorneys for the Cohen Defendants reviewed these filings, and Mr. Cohen had actual knowledge that Bed Bath was buying back stock. The Cohen Defendants' final purchases of BBBY securities were completed in early March 2022.

---

[1] The Court resolved the other two defenses — that the complaint fails to state a claim and is barred under Rule 16a-2 — on the motion to dismiss. Dkt. 32 at 19–23.

- Completion of the announced $275 million in fourth-quarter repurchases would have reduced the share count enough to put the Cohen Defendants over 10% by March 1 even if every dollar had been spent at the quarter's highest trading price.

The Cohen Defendants have no admissible evidence to counter these facts. Many of the documents they point to postdate their trades on March 1, 2, and 3, 2022. These documents include a March 24 cooperation agreement and statements made by BBBY's former counsel in the fall of 2022. The Court has already held that these anachronistic facts were immaterial to the Cohen Defendants' decisionmaking in early March. *See, e.g.*, Dkt. 32 at 19 n.15 ("[T]hese filings occurred approximately three weeks after the Cohen defendants filed their Schedule 13D and thus have no impact on how they calculated the ownership percentage they reported at the time of that filing."). That sound reasoning endures as the law of the case and comports with authority. *See C.R.A. Realty Corp. v. Enron Corp.*, 842 F. Supp. 88, 92 (S.D.N.Y. 1994) ("Because Rule 13d-1([j]) is relied upon by investors when they make investment decisions, the court should look only to the information available at the time of [the investor's] actions when determining [the investor's] liability for those actions.").

The Cohen Defendants may also proffer expert evidence or filings by other BBBY investors. Neither presents a triable issue. The Cohen Defendants concede [redacted]. Their own attorney testified [redacted]. As for the expert, she opined [redacted] Such evidence amounts to "'the *ipse dixit* of the expert,'" lacks a sufficient basis in fact and data, and should be excluded. *Cleaveland v. Home Depot USA Inc.*, 788 F. Supp. 3d 325, 337 (D. Conn. 2025) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)), *aff'd*, No. 25-1582-cv, 2026 WL 904984 (2d Cir. Apr. 2, 2026) (summary order).

## III. Conclusion and Briefing Schedule

BBBY accordingly requests a conference for a proposed motion for summary judgment under Rule 56. The parties jointly propose the following briefing schedule: (1) any motions due October 30; (2) oppositions due December 14; (3) replies due January 13, 2027.[2]

Respectfully submitted,

/s/ James A. Hunter

Copies by ECF: All Counsel of Record

---

[2] In addition to objecting to the expert evidence under Rule 56(c)(2), BBBY intends to file a *Daubert* motion to exclude it under Federal Rule of Evidence 702. BBBY seeks the Court's guidance on the form and timing of this motion. If the Court would like the *Daubert* motion briefed and bundled with BBBY's summary judgment motion, then BBBY respectfully asks to have the limit for its opening brief enlarged by 3,500 words.