**WOLLMUTH MAHER & DEUTSCH LLP**
500 FIFTH AVENUE
NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

September 17, 2026

**VIA ECF**
Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *20230930-DK-Butterfly-1, Inc. v. Cohen et al.*, Case No. 1:24-cv-05874-NRB

Dear Judge Buchwald:

Defendants Ryan Cohen and RC Ventures LLC (the "Cohen Defendants") submit this letter pursuant to the Amended Case Management Plan and Scheduling Order, ECF No. 47, and Rule 2.B of Your Honor's Individual Practices, responding to the September 14, 2026 letter from Plaintiff 20230930-DK-Butterfly-1, Inc. ("Plaintiff"), the successor to Bed Bath & Beyond Inc. ("BBBY"), requesting a pre-motion conference regarding its anticipated motion for summary judgment. ECF No. 59 ("Plaintiff's Letter").[1]

## I. Plaintiff Cannot Sustain a Section 16(b) Claim Based on the Undisputed Material Facts

In Plaintiff's Letter, Plaintiff concedes that the following facts are undisputed:

- On November 2, 2021, BBBY announced its plan to repurchase $400 million of stock over the third and fourth quarters of its 2021 fiscal year.
- When BBBY filed its third quarter report on January 6, 2022, it disclosed it had repurchased $120 million resulting in an outstanding share count of 96,337,713 as of the end of its third quarter on November 27, 2021. With that filing, BBBY announced that it anticipated repurchasing another $275 million of shares in the fourth quarter, but did not disclose how many shares, if any, had been purchased between November 2021 and the date of the report.
- The same disclosure stated that BBBY had spent $100 million on "capital expenditures and share repurchase activity" between November 27 and December

[1] The Cohen Defendants incorporate by reference herein the background and argument sections set forth in their September 14, 2026 letter request for a pre-motion conference regarding their anticipated motion for summary judgment ("Defendants' Letter"). ECF No. 58.

25, without allocating between the two or disclosing the shares repurchased.

- The Cohen Defendants made their final purchases of BBBY stock on March 3, 2022.

- The Cohen Defendants relied on BBBY's share count disclosure from the January 6, 2022 filing (which was as of November 27, 2021) in calculating their beneficial ownership of 9.8%.

Plaintiff does not and cannot dispute that, following BBBY's January 6, 2022 share count disclosure, BBBY made no updates regarding the status of its share repurchase program until it disclosed its fourth quarter 2021 earnings on April 13, 2022, at which time it updated its outstanding share count. Accordingly, it cannot be disputed that BBBY disclosed neither publicly nor directly to the Cohen Defendants any other information about its repurchase program between January 6, 2022, before the Cohen Defendants started making purchases, and April 13, 2022, after the Cohen Defendants stopped buying BBBY stock.

Plaintiff argues that the Cohen Defendants had "reason to believe" the information contained in BBBY's January 6, 2022 share count disclosure was inaccurate, as a matter of law, based solely on their knowledge of an announcement of a share repurchase program in November 2021, as well as a January 2022 update regarding the amount spent in "capital expenditures and share repurchase activity" and its intent to continue its repurchasing in the forthcoming quarter. Plaintiff's Letter therefore confirms that, after extensive discovery, the only evidence Plaintiff has to support its claim is that the Cohen Defendants' attorneys had reviewed BBBY's public filings and knew that a buyback *program* had been announced but did not and could not know of any buyback transactions, their amounts, or timing.

On this point, the Cohen Defendants' attorney testified that, while he was aware of BBBY's buyback program, this alone was not sufficient to put the Cohen Defendants on notice that their purchases pushed them over the 10% threshold because, following the January 2022 disclosure on which the Cohen Defendants relied, BBBY did not disclose any updated share count until after the Cohen Defendants completed their purchases. He explained that investors may and routinely do rely on the last-disclosed share count unless the issuer provides concrete information from which it is possible to calculate an updated share count. This is consistent with the SEC guidance summarized in Defendants' Letter, which provides that an investor does not become a beneficial owner under Rule 16a-1 merely from the announcement of a repurchase program. Instead, the investor must know about the actual transaction ***and*** whether it will push the investor over the 10% threshold before Section 16 applies. SEC Division of Corporation Finance, Compliance and Disclosure Interpretations, Exchange Act Section 16 and Related Rules and Forms, Interp. 209.02 (May 23, 2007). It is undisputed that the Cohen Defendants did not and could not have known the effects the buybacks had on their ownership percentage until BBBY updated its share count in April 2022.

For the reasons set forth in Defendants' Letter, Plaintiff cannot sustain a Section 16(b) claim based upon these facts alone. Plaintiff also cannot point to any authority supporting its position that the Cohen Defendants are required to disgorge all profits resulting from their purchases and sales while they were a greater than 10% holder, even though they had no way of

knowing at the time of their purchases whether or at what point they crossed over the 10% threshold. This is unsurprising because, as detailed in Defendants' Letter, such an interpretation of Section 16(b) would directly conflict with the case law and the SEC's guidance regarding Section 16(b) liability, and stretch the statute and its intended purpose well beyond its logical bounds.

BBBY, of course, could have disclosed an updated share count at any time before April 13, 2022, which would have put the Cohen Defendants on notice of their status. But it did not, and Plaintiff should not be permitted to take advantage of its own inaction to lay a trap for its investors.[2] Plaintiff's attempt to impose liability in such a scenario has no support and does not warrant summary judgment.

## II. The Cohen Defendants Request the Briefing Schedule for *Daubert* Motions Be Set After Summary Judgment Motions Are Decided

In response to Plaintiff's request for guidance regarding the timing for filing *Daubert* motions, the Cohen Defendants respectfully request the Court postpone the scheduling of *Daubert* briefing until after the Court rules on any dispositive motions. District courts "retain the discretion to dictate the timing of a motion" based upon "the inherent power of every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Charter Nat. Life Ins. Co. v. FPL Grp. Cap., Inc.*, 1997 WL 151033, at *1 (S.D.N.Y. 1997). Given that the facts are largely undisputed, and both parties intend to move for summary judgment, there is a possibility that this case will be decided without a need to go to trial. Therefore, it would serve the interests of the parties, as well as judicial economy, to postpone motion practice regarding the admissibility of expert opinions until after any forthcoming motions for summary judgment have been decided.

Respectfully submitted,

*/s/ Joshua M. Slocum*
Joshua M. Slocum
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

*Counsel for Ryan Cohen and RC Ventures LLC*

cc: Counsel of Record (via ECF)

[2] This is not the only case in which this Plaintiff has sought to stretch the bounds of Section 16(b) and target its investors for its own voluntary conduct. *20230930-DK-Butterfly-1, Inc., f/k/a Bed Bath & Beyond Inc. v. HBC Investments LLC, et al.*, 180 F.4th 490 (2d Cir. 2026) (rejecting Plaintiff's attempt to impose Section 16(b) liability on investor by claiming blocker provisions in BBBY's contract with investor, which were put in place to prevent 16(b) liability, were "illusory").