**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 20230930-DK-BUTTERFLY-1, INC., f/k/a BED BATH & BEYOND INC.,<br><br>Plaintiff,<br><br>v.<br><br>RYAN COHEN and RC VENTURES LLC,<br><br>Defendants. | Case No. 1:24-cv-05874-NRB |

**DECLARATION OF RYAN P. NEBEL IN SUPPORT OF DEFENDANTS RYAN COHEN AND RC VENTURES LLC'S MOTION FOR SUMMARY JUDGMENT**

I, Ryan P. Nebel, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a partner of Olshan Frome Wolosky LLP ("Olshan") in New York and the Vice Chair of Olshan's shareholder activism practice group. I have practiced securities law for approximately 14 years, with a concentration in shareholder activism where I routinely counsel clients with respect to compliance with Sections 13(d) and 16 of the Securities Exchange Act of 1934 (the "Exchange Act"). Olshan is widely recognized and consistently ranked as having the nation's premier shareholder activism practice, being ranked as the No. 1 legal advisor to activist investors by Chambers USA (Band 1), The Legal 500 United States Guide, FactSet, Bloomberg, Refinitiv, Diligent and The Deal, among others. Olshan advises on over 100 activist campaigns each year, many of which involve Schedule 13D filings. Since 2019 alone, my name has appeared on the cover page of more than 425 Schedule 13D filings, and I have been responsible for the preparation and filing of many more since joining Olshan in May 2013. I have consistently been named as a "Leading Lawyer" by Chambers USA, recognized as a "Next Generation Partner," "Recommended Lawyer" and a "Key Lawyer" in The Legal 500 United States guide for

M&A/Corporate and Commercial: Shareholder Activism - Advice to Shareholders and named a New York "Rising Star" by Super Lawyers.

2. I submit this declaration based on my personal knowledge. If called as a witness, I could and would testify competently regarding the facts in this declaration.

3. In early 2022, Olshan represented RC Ventures LLC ("RCV") and Ryan Cohen with respect to their investment in Bed Bath & Beyond Inc. ("BBBY"), including, among other matters, the preparation of their Schedule 13D and, later, their Form 3, Form 4, and Schedule 13D amendments.

4. In determining the percentage of a class of securities beneficially owned by a client for purposes of Section 13(d) (and by extension, Section 16) of the Exchange Act, my practice, and the practice of securities practitioners generally as I understand it, is to use the number of shares outstanding reported in the issuer's most recent quarterly or annual report, and to review the issuer's subsequent filings for disclosure of an updated share count or of a specific number of shares issued or repurchased. This practice follows Rule 13d-1(j) of the Exchange Act, which permits reliance on the issuer's most recent quarterly or annual report, and any current report subsequent thereto, unless the filer knows or has reason to believe the information set forth therein is inaccurate.

5. In preparing the Schedule 13D filed on March 7, 2022 by RCV and Mr. Cohen, [redacted] The Schedule 13D disclosed

that the percentage reported was based on the Form 10-Q figure, which I believed to be accurate at the time and consistent with the practice of securities practitioners generally.

6. I was aware that BBBY had announced a share repurchase program. That awareness did not provide a basis to depart from the reported share count. Issuer repurchase programs are, in my experience, heavily caveated, there is no assurance of the timing or price at which shares will be repurchased, and a disclosed dollar amount of repurchases cannot be converted into a number of shares without knowing the specific prices paid, dates and share quantities of the repurchases, which BBBY had not disclosed. Calculating a current share count from an estimated dollar figure for potential repurchases is not done in practice in my experience, and a filing based on such a calculation could itself be misleading.

7. Nor, in my experience, is it the practice of securities practitioners to ask an issuer for a current share count in connection with a Section 13(d) filing by a non-insider (*i.e.*, not an officer or director of the issuer), and an issuer has no obligation to provide one. Neither I nor, to my knowledge, anyone else at Olshan, Mr. Cohen, or RCV received any current share count from BBBY before BBBY's public disclosures in April 2022.

8. On March 2, 2022, [redacted] It is my understanding

that RCV acquired 90,000 additional shares on March 2 and 3, 2022, for a total beneficial ownership of 9,450,100 shares, and made no further purchases.

9. The Cooperation Agreement, dated March 24, 2022 (the "Cooperation Agreement"), by and among BBBY, RCV and Mr. Cohen, which was entered into several weeks after RCV's last purchase of BBBY shares on March 3, 2022, set forth that RCV's ownership of 9,450,100 shares constituted approximately 9.8% of BBBY's outstanding shares, thereby reaffirming the accuracy of the share count reported in BBBY's January 6, 2022 Form 10-Q as of the date of the Cooperation Agreement from a securities practitioner's perspective.

10. BBBY's Form 10-K filed April 21, 2022 disclosed 79,845,789 shares outstanding as of March 26, 2022. In August 2022, [redacted]

11. At no time before BBBY's April 2022 disclosures did I believe, or have any information suggesting, that the share count reported in BBBY's January 6, 2022 Form 10-Q could not be relied upon to calculate RCV's percentage ownership of BBBY's outstanding shares.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 29, 2026.

Ryan P. Nebel