**WOLLMUTH MAHER & DEUTSCH LLP**
500 FIFTH AVENUE
NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

October 30, 2026

**VIA ECF**
Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *20230930-DK-Butterfly-1, Inc. v. Cohen et al.*, Case No. 1:24-cv-05874-NRB

Dear Judge Buchwald:

Defendants Ryan Cohen and RC Ventures LLC (the "Cohen Defendants") respectfully submit this letter pursuant to Section 2.C.1 of Your Honor's Individual Practices outlining the substantive basis for the Cohen Defendants' motion for summary judgment, filed today via ECF. Two courtesy copies of all motion papers, marked as such, are being submitted to Chambers.

The motion seeks summary judgment dismissing the Second Amended Complaint in its entirety. The accompanying papers are: (1) the Notice of Motion; (2) the Cohen Defendants' Memorandum of Law; (3) the Cohen Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1; (4) the supporting Declarations of Ryan Cohen and Ryan P. Nebel; and (5) the supporting Declaration of counsel and the exhibits annexed thereto.

This is a short-swing profit case under Section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"). Following the Court's April 18, 2025 Memorandum and Order dismissing Plaintiff's "director by deputization" theory, Plaintiff's sole remaining theory is that the Cohen Defendants were "beneficial owners" of more than 10% of the outstanding common stock of Bed Bath & Beyond Inc. ("BBBY") when they purchased BBBY shares between January and March 2022 based solely on BBBY's disclosures about expected future repurchases. The undisputed summary judgment record defeats that theory as a matter of law, for two independent reasons.

## I. The Cohen Defendants did not beneficially own more than 10% when they bought BBBY stock.

*First*, the Cohen Defendants did not beneficially own more than 10% of BBBY's shares when they purchased. SEC Rule 13d-1(j) permitted them to rely on BBBY's most recently reported outstanding share count unless they knew or had reason to believe it was inaccurate. 17 C.F.R. § 240.13d-1(j) (2022). The SEC's staff has confirmed that, following an issuer buy-back, an investor without "advance awareness of the buy-back and/or its consequences" becomes a 10% holder only

when the issuer's next report "indicates the amount of securities outstanding following the buy-back." As the SEC guidance unmistakably implies, the "buy-back" must be a specific transaction or series of transactions, from which an investor could file its Form 3 within 10 days, not a general announcement of a repurchase program in which the actual transactions are unknowable. Peter J. Romeo & Alan L. Dye, S*ection 16 Treatise and Reporting Guide* § 2.03[3][j][iv] n.80 (6th ed. 2024).

At the time the Cohen Defendants made their purchases, the only outstanding share count in the public domain during the relevant period was the 96,337,713 shares BBBY reported as of November 27, 2021 in the Form 10-Q it filed on January 6, 2022. Measured against that count, the Cohen Defendants held 9.8%—a figure their experienced securities counsel calculated, and a figure that BBBY itself, its bankers, and its consultants each independently agreed with at the time. The same was true of BBBY's sophisticated institutional investors who filed Schedule 13Gs in February 2022 *after* BBBY announced the estimated $275 million in further repurchases using that same November 27, 2021 share count, because no more current count was available.

The calculation was performed by the Cohen Defendants' outside securities counsel, Ryan Nebel of Olshan Frome Wolosky LLP. Consistent with Rule 13d-1(j), Mr. Nebel and his team determined the Cohen Defendants' beneficial ownership [redacted] As Mr. Nebel testified, [redacted]

Mr. Nebel's testimony is consistent with the record. No public disclosure between January 6 and the Cohen Defendants' final purchase on March 3, 2022 revealed, or allowed anyone to calculate, how many shares BBBY had repurchased after November 27, 2021. BBBY announced only an *estimated* dollar amount of future repurchases, wrapped in forward-looking disclaimers that actual results could "differ materially." Plaintiff's theory depends on assuming BBBY executed repurchases, but the only interim figure BBBY disclosed combined capital expenditures and share repurchases into a single $100 million number from which no share count could be derived, and the $275 million estimate was itself a forecast BBBY cautioned might not be met. Indeed, Plaintiff's Rule 30(b)(6) witness confirmed that [redacted] Mere awareness of an announced buyback, without any way to know whether, when, or how many shares were actually repurchased, does not, as a matter of law, supply "reason to believe" the reported count was inaccurate. The SEC's interpretive guidance and the decision in *C.R.A. Realty Corp. v. Enron Corp.* confirm as much.

BBBY did not publicly disclose a reduced share count reflecting more than 10% ownership until April 2022—after the purchases were complete.

Accepting Plaintiff's theory would make this Court the first *ever* to impose Section 16(b) strict liability on an investor under these circumstances. That would be out of step with the teachings of the Supreme Court and Second Circuit to construe Section 16(b) narrowly and cautiously, to avoid unfair application. *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 252 (1976); *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 126 (2d Cir. 2018) (citing *Gollust v. Mendell*, 501 U.S. 115, 122 (1991)).

Plaintiff's overreach is of a piece with its broader litigation strategy: the Second Circuit recently rejected this same Plaintiff's attempt to stretch Section 16(b) to reach an investor that had structured its BBBY transactions to avoid liability. *See 20230930-DK-Butterfly-1, Inc. v. HBC Investments LLC*, 180 F.4th 490 (2d Cir. 2026). Neither the statute, the SEC's rules and guidance, the case law, nor the undisputed record supports that result.

**II. Even if Section 16(b)'s short-swing profit rule applied, Section 23(a) provides safe harbor for the Cohen Defendants' good-faith conformity with SEC regulations.**

*Second*, and independently, even if Rule 13d-1(j) were read to require more than its text provides, Section 23(a) of the Exchange Act bars liability. Section 23(a)(1) provides a complete defense for any act done in good faith in conformity with the text of an SEC rule. The Cohen Defendants, through experienced counsel, relied in good faith on Rule 13d-1(j) as written and as construed by the SEC and the courts, disclosed the basis of their calculation in their public filings, and stopped purchasing below the 10% threshold that calculation identified. The Second Circuit has long applied Section 23(a) to shield exactly this kind of good-faith reliance.

For these reasons, and those set forth more fully in the accompanying Memorandum of Law, the Cohen Defendants respectfully request that the Court grant summary judgment and dismiss the Second Amended Complaint in its entirety.

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ Joshua M. Slocum*

Joshua M. Slocum
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

*Attorneys for Defendants Ryan Cohen and RC Ventures LLC*

cc: Counsel of Record (via ECF)